In The
# United States Court Of Appeals
## For The Sixth Circuit

———— ◆ ————

## CASE NOˢ: 14-2120 & 14-2152

———— ◆ ————

# LOUIS LEONOR,

*Plaintiff-Appellee Cross-Appellant,*

v.

# PROVIDENT LIFE AND ACCIDENT COMPANY; PAUL REVERE LIFE INSURANCE COMPANY,

*Defendants-Appellants Cross-Appellees.*

———— ◆ ————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN AT DETROIT

———— ◆ ————

### BRIEF OF THE APPELLEE CROSS-APPELLANT

———— ◆ ————

**Michael Max Jacob**
**3001 W. Big Beaver Road,**
**Suite 624**
**Troy, MI 48084-0000**
**248-244-0172**

**Jeffrey D. Wilson**
**3001 W. Big Beaver Road,**
**Suite 624**
**Troy, MI 48084-0000**
**248-244-0173**

*Counsel for Appellee Cross-Appellant*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-2120                    Case Name: Louis Leonor v. Provident Life et al

Name of counsel: Michael M. Jacob

Pursuant to 6th Cir. R. 26.1, Louis Leonor

*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ September 22, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Michael M. Jacob
Young Basile Hanlon & MacFarlane
3001 W. Big Beaver Rd., Troy MI

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT AGAINST ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . ix

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . 2

CONCISE STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.     Leonor Purchased Three Occupational Disability Insurance
Policies from Appellants for his Occupation as a Dentist... . . . . . . . . 4

B.     Leonor Became Disabled And Has Not Practiced Dentistry Since
Becoming Disabled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.     Appellants' Claims Handling Under The Three Policies.. . . . . . . . . . 7

1.     Leonor's Submissions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.     Appellants Initially Determined Leonor is Totally
Disabled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3.     Appellants Secretly Began a Plan to Cancel Benefits Under
the 8090 and 2074 Policies.. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4.     Appellants Began Efforts To Challenge Medical Basis for
Plaintiff's Inability to Practice Dentistry.. . . . . . . . . . . . . . . . 14

5.     Appellants Shift the Focus of their Challenge of Leonor's
Total Disability Benefits under the 0113 Policy... . . . . . . . . . 15

6.     Leonor Appealed Appellants' Decisions Internally to No
Avail.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D.      Leonor's Complaint.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

E.      The District Court's Dismissal of Count II.. . . . . . . . . . . . . . . . . . . 18

F.      The District Court's Summary Judgment Opinion.. . . . . . . . . . . . . 19

G.      The District Court's Reconsideration Opinion.. . . . . . . . . . . . . . . 20

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.      Legal Standards.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        A.      Standard of Review... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        B.      Application of State Law... . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        C.      Interpretation of Insurance Contracts.. . . . . . . . . . . . . . . . . 26

II.     The District Court Correctly Concluded That The Three Policies
        Provided "Total Disability" Coverage After Leonor Was No
        Longer Able To Perform Dentistry.... . . . . . . . . . . . . . . . . . . . . . . 27

        A.      Appellants Waived The "Grammar Argument".. . . . . . . . . . 29

        B.      The District Court Properly Concluded that Leonor Is
                Totally Disabled.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

                1.      The District Court Correctly Analyzed the Law and
                        Facts... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

                2.      Appellants' Arguments Are Without Merit... . . . . . . . . 34

                        a.      Appellants' "grammar argument" fails.. . . . . . . 34

        b.     The district court gave effect to the definite article "the" when it reached its conclusion that the Three Policies were ambiguous... . . . . . 39

        c.     The district court's opinion adds "some of" as a way to explain the differences between Leonor's and Appellants' interpretations.. . . . . . 40

        d.     The district court's holding does not render the residual disability clauses in the Three Policies superfluous.. . . . . . . . . . . . . . . . . . . . 41

    C.    Summary Judgment For Leonor Is Warranted Even If This Court Accepts Appellants' Interpretation.. . . . . . . . . . . . . . 45

III.   The District Court Erred In Concluding That Leonor Was Not Entitled To Penalty Interest As The Claim Was Not Reasonably In Dispute... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

IV.   The District Court Also Erred By Denying Leonor The Opportunity To Pursue His Fraud Claim Where He Alleged That Appellants Deceived Him.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF SERVICE AND FILING. . . . . . . . . . . . . . . . . . . . . . 56

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

ADDENDUM -- DESIGNATION OF LOWER COURT DOCUMENTS. . . . . . 58

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*All Seasons Climate Control, Inc. v. N.L.R.B.*,
    540 F. App'x 484 (6th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Betts v. Fletcher*,
    No. 266613, 2006 WL 1751823 (Mich. Ct. App. June 27, 2006). . . . . . . . 54

*Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*,
    667 F.3d 669 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Canu v. Nat'l Life Ins. Co.*,
    No. 12-12838, 2013 WL 1883534 (E.D. Mich. May 6, 2013). . . . . . . . 44, 45

*Carlyon v. Mut. of Omaha Ins. Co.*,
    559 N.W.2d 407 (Mich. Ct. App. 1996). . . . . . . . . . . . . . . . . . . . . . 27, 30, 48

*CenTra, Inc. v. Estrin*,
    538 F.3d 402 (6th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Conway v. Paul Revere Life Ins. Co.*,
    No. Civ. 5:99CV150-T, 2002 WL 31770489 (W.D.N.C. Dec. 5, 2002). . . 43

*Craft Agency, Inc. v. Rickard*,
    No. 250500, 2005 WL 2086132 (Mich. Ct. App. Aug. 30 2005). . . . . . . . 53

*DeFrain v. State Farm. Mut. Auto. Ins. Co.*,
    817 N.W.2d 504 (Mich. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Erickson v. Citizens Ins. Co.*,
    550 N.W.2d 606 (Mich. Ct. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Farm Bureau Mut. Ins. v. Blood*,
    583 N.W.2d 476 (Mich. Ct. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Fed. Gasohol Corp. v. Total Phone Mgmt, Inc.*,
    24 F. Supp. 2d 1149 (D. Kan. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Fiebing v. Erickson*,
    No. 298433, 2011 WL 3118801 (Mich. Ct. App. July 26, 2011). . . . . . . . 54

*Foreman v. Foreman*,
    701 N.W.2d 167 (Mich. Ct. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Frazier v. Pioneer Am., LLC*,
    455 F.3d 542 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Gecewicz v. Henry Ford Macomb Hosp. Corp.*,
    683 F.3d 316 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Giddens v. Equitable Life Assur. Soc. of U.S.*,
    445 F.3d 1286 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . 32, 40, 41, 42, 44

*Griswold Properties, LLC v. Lexington Ins. Co.*,
    741 N.W.2d 549 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ile v. Foremost Ins. Co.*,
    809 N.W.2d 617 (Mich. Ct. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . 27, 37

*Jones v. Jackson Nat. Life Ins. Co.*,
    819 F. Supp. 1372 (W.D. Mich. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Karlin v. Paul Revere Life Ins. Co.*,
    742 F. Supp. 2d 1253 (D. Kan. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*Kerwin v. Paul Revere Life Ins. Co.*,
    6 F. App'x 233 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Kmart Corp. v. Fireman's Fund Ins. Co.*,
  88 F. Supp. 2d 767 (E.D. Michigan 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Lawrence M. Clarke, Inc. v. Richco Constr. Inc.*,
  803 N.W.2d 151 (Mich. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*,
  436 F.3d 662, (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*McOsker v. Paul Revere Life Ins. Co.*,
  279 F.3d 586 (8th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43, 51

*Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.*,
  519 N.W.2d 864 (Mich. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Miller v. Nw. Mut. Life Ins. Co.*,
  392 F.3d 973 (8th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Minority Employees of the Tenn. Dept. of Employment Sec. v. Tennessee*,
  901 F.2d 1327 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Murphy v. Nat'l City Bank*,
  560 F.3d 530 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*New Start, Inc. v. Bristol West Ins. Co.*,
  No. 274085, 2007 WL 1207099 (Mich. Ct. App. Apr. 24, 2007). . . . . . . . 52

*Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*,
  655 F.3d 358 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Patricca v. The Zoning Bd. of Adjustment of the City of Pittsburgh*,
  590 A.2d 744 (Pa. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Pearson v. Flood Prof'l, Inc.*,
  No. 298359, 2012 WL 205799 (Mich. Ct. App. Jan. 24, 2012). . . . . . . . . . 54

*Robinson v. City of Detroit*,
  613 N.W.2d 307 (Mich. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Rory v. Cont'l Ins. Co.*,
  703 N.W.2d 23 (Mich. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Scottsdale Ins. Co. v. Flowers*,
  513 F.3d 546 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Shapiro v. Berkshire Life Ins. Co.*,
  No. 98 Civ. 2452 AGS, 1999 WL 566372 (S.D.N.Y. Aug. 3, 1999). . . . . . 47

*Singer v. Am. States Ins.*,
  631 N.W.2d 34 (Mich. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*State Farm Fire & Cas. Co. v. Old Republic Ins. Co.*,
  644 N.W.2d 715 (Mich. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Stew Farm, Ltd. v. Natural Res. Conservation Serv*,
  767 F.3d 554 (6th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Stoneman v. Paul Revere Life Ins. Co.*,
  No. 12-15334, 2013 WL 6768616 (E.D. Mich. Dec. 20, 2013). . . . 33, 34, 35

*Stryker Corp. v. XL Ins. Am.*,
  735 F.3d 349 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Talley v. State Farm Fire and Cas. Co.*,
  223 F.3d 323 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Thurman v. Yellow Freight Sys., Inc.*,
  97 F.3d 833 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Aparco-Centeno*,
  280 F.3d 1084 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Maryland Bank & Trust Co.*,
 632 F. Supp. 573 (D. Md. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Wilkie v. Auto-Owners Ins. Co.*,
 664 N.W.2d 776 (Mich. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 38

*Ziegler v. IBP Hog Mkt., Inc.*,
 249 F.3d 509 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## STATUTES

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Mich. Comp. Laws § 333.16601(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Mich. Comp. Laws § 333.16601(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 47

Mich. Comp. Laws § 500.2006(4). . . . . . . . . . . . . . . . . . . . . . . . . . 3, 49, 50

Mich. Comp. Laws § 500.3123(1)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## RULES

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

MRPC 3.3(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## STATEMENT AGAINST ORAL ARGUMENT

Leonor believes oral argument is not necessary because the legal issues and standard of review are clear, and the record is complete and not disputed.  To the extent the Court grants Appellants' request for oral argument, Leonor respectfully requests to participate in oral argument and have equal time to that of Appellants.

## JURISDICTIONAL STATEMENT

Leonor agrees with Appellants' purported basis for the district court's jurisdiction over the dispute and this Court's jurisdiction over Appellants' appeal. Because Leonor's cross-appeal as it relates to penalty interest is based on the same summary judgment opinion by the district court (R.48, SJ Opinion, Pg. ID #1424-25)[1], the district court's jurisdiction and this Court's jurisdiction are also the same as that stated by Appellants.

This Court additionally has jurisdiction over Leonor's cross-appeal as it pertains to his fraud claim based on 28 U.S.C. §1291. The district court dismissed Count II of Leonor's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R.16, Dismissal Opinion, Pg. ID ##188-94.) The district court subsequently entered a final amended judgment on August 5, 2014. (R.57, Judgment, Pg. ID ##1512-13.) Leonor timely filed a Notice of Cross-Appeal on September 5, 2014. (R.61, Notice of Cross-Appeal, Pg. ID #1519.)

---

[1] Citations to the district court ECF docket number will appear as R._ and contain a brief description of the document and Pg. ID #, per 6Cir. R. 28. Any citations to this Court's docket will appear as 6R._, [Description], p._ where the page number represents the "Page" number contained in the header.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Leonor became licensed to practice dentistry in 1987. In 1990, he first purchased disability insurance for his occupation as a Dentist from Appellants and paid the premiums under that policy, and two other policies, for nearly two decades until he became disabled in 2009. The policies provided Total Disability benefits if Leonor is "unable to perform the important duties of [his] Occupation." Prior to becoming disabled, Leonor practiced dentistry full-time (35-40 hours per week), and spent an additional 10-15 hours managing his investments that included dental practices, real estate, a construction company, a plumbing company, etc.

Because Leonor could not practice dentistry, Appellants initially determined that he was entitled to Total Disability benefits under the three policies. After becoming disabled, Leonor increased the amount of time spent on his investments. Once Appellants discovered that Leonor was earning substantial sums of money from his investments, Appellants concocted a plan to challenge his benefits. First, Appellants sought to challenge the medical basis for his disability by requesting an Independent Medical Examination, which confirmed he was disabled. Next, Appellants recharacterized his Occupation from "Dentist" to a "Dentist and Owner/Operator." Appellants then cut off benefits because he was able to manage his investments.

It is undisputed that Leonor remains unable to practice dentistry. The issues presented for review are:

1.    Whether the district court correctly determined that the insurance policies at issue were ambiguous and granted summary judgment for Leonor, concluding he was Totally Disabled under the policies because he can no longer practice dentistry.

2.    Whether the district court improperly denied penalty interest under Mich. Comp. Laws § 500.2006(4) by imposing a requirement that does not apply when the party seeking payment is the direct insured.

3.    Whether the district court improperly dismissed the fraud claim that seeks redress for the representations that the policies covered his occupation as a licensed dentist that lead to the purchase of the insurance policies at issue when Appellants now assert that the policies do not cover his occupation as a dentist.

## CONCISE STATEMENT OF THE CASE

Plaintiff-Appellee/Cross-Appellant Louis Leonor, DDS ("Leonor") was a dentist licensed under the laws of Michigan.[2]  It is undisputed that a neck injury and resulting surgery left Leonor unable to practice dentistry.  Although Appellants attempted to deny coverage for several reasons, the district court properly determined Leonor was "Totally Disabled" pursuant to Appellants' insurance policies.

### A.     Leonor Purchased Three Occupational Disability Insurance Policies from Appellants for his Occupation as a Dentist.

Leonor first became licensed to practice dentistry in 1987.  In April 1990, Leonor submitted an "Application for Disability Insurance" to Defendant-Appellant Paul Revere Life Insurance Company ("Paul Revere").  (R.33-2, Application No. 162258, Pg. ID ##944-47.)  Leonor disclosed that his occupation was "Dentist" and his "exact duties" were "General Dentistry."  (R.33-2, Application No. 162258, Pg. ID #944.)  He further disclosed that he was self-employed and owned 100 percent of his dentistry business.  (*Id*.)  Paul Revere thereafter issued Policy No. 0102450113 ("0113 Policy").  (R.33-2, 0113 Policy,

---

[2]  The practice of dentistry is a licensed profession in the State of Michigan defined as "the diagnosis, treatment, prescription, or operation for a disease, pain, deformity, deficiency, injury, or physical condition of the human tooth, teeth, alveolar process, gums or jaws, or their dependent tissues, or an offer, undertaking, attempt to do, or holding oneself out as able to do any of these acts."  MCLA 333.16601(d).  It is undisputed that Leonor can no longer practice dentistry as defined by statute.

Pg. ID ##906-42.)  The 0113 Policy provided Total Disability benefits for when the insured, because of injury or sickness, is "unable to perform the important duties of [the insured's] Occupation."  (R.33-2, 0113 Policy, Pg. ID #920.)  "'Your Occupation' means the occupation in which [the insured was] regularly engaged at the time [the insured] become Disabled."  (*Id.*)  The 0113 Policy also provided "Residual Disability" benefits for when the insured "is unable to perform one or more of the important duties of [the insured's] Occupation."  (R.33-2, 0113 Policy, Pg. ID #921.)

In June 1995, Leonor applied for a second occupational disability insurance policy.  (R.33-3, Application No. 33527, Pg. ID ##977-80.)  Leonor disclosed that his occupation was "Dentist" and his "exact duties" were "General Dentistry." (R33-3, Application No. 33527, Pg. ID #977.)  He further disclosed that for the past six years he owned 100 percent of his employer, Oakcrest Dental Center, a corporation with 12 full-time employees.  (*Id.*)  Paul Revere thereafter issued Policy No. 0102748090 ("8090 Policy").  (R.33-3, 8090 Policy, Pg. ID ##951-75.) The 8090 Policy likewise contained Total Disability and Residual Disability benefits.  (R.33-3, 8090 Policy, Pg. ID ##959-60.)

In December 2002, Leonor applied for a third occupational disability insurance policy, listing his occupation as "Dentist" for Oakcrest Dental.  (R.34-2, Application No. 025830090721, Pg. ID ##1016-17.)   Defendant-Appellant

Provident Life and Accident Insurance Company ("Provident," collectively with Paul Revere, "Appellants") thereafter issued Provident Life Policy No. 06-7912074 ("2074 Policy"), which similarly provided Total and Residual Disability benefits. (R.34-2, 2074 Policy, Pg. ID #998.)

Appellants' parent company, Unum, administered the 0113 Policy, the 8090 Policy, and the 2074 Policy (collectively, the "Three Policies")).[3]  Leonor renewed the Three Policies annually and paid all required premiums, totaling more than $75,000 from inception of his policies until he became disabled.   (R.43, Appellants' Counter-Statement of Material Facts ¶32, Pg. ID #1281.)

### B.  Leonor Became Disabled And Has Not Practiced Dentistry Since Becoming Disabled.

On or about March 10, 2009, Leonor suffered a cervical spine disc herniation (including related neck surgery—an anterior cervical discectomy with fusion performed on March 11, 2009) and was immediately and totally disabled from practicing dentistry.  (*See* R.34-3, Attending Physician's Statement, Pg. ID ##1021-22.)  It is undisputed that Leonor can no longer practice dentistry.

Prior to March 2009, Leonor's "occupation was as a dentist. [He] practiced dentistry."  (R.32-2, Leonor Dep. 75, Pg. ID #883.)  He also held investments, including dental practices, apartment buildings, construction companies, plumbing

---

[3]  Appellants appear to have excerpted the relevant provisions of the Three Policies accurately in their Statement of Facts, *see* 6R.24, Appellants' Brief, pp.16-19; therefore, the relevant provisions have not been reproduced in their entirety here.

companies, 401(k), etc.  (*See id.*)  More specifically, at the time of his disability, Leonor practiced dentistry approximately 35-40 hours per week at his Stoneybrook Dental office.  (R.32-2, Leonor Dep. 66, Pg. ID #881; R.43, Appellants' Counter-Statement of Material Facts, Pg. ID #1282; R.34-4, Rodecker Report, Pg. ID ##1024-25; R.35-2, Spar Dep. 105-109, Pg. ID ##1058-59; R.29-12, Unum Report of Findings, Pg. ID #542.)  In addition to his full-time dentistry duties, Leonor spent up to 15 to 25 hours per week "managing/overseeing all his businesses, both dental and non-dental."  (R.29-12, Unum Report of Findings, Pg. ID #542.)

After becoming disabled in March 2009, Leonor has been "able to look into more dental practice investments. [He has] been able to look into more real estate investments and bolster the investment side of [his] life."  (R.32-2, Leonor Dep. 76, Pg. ID #883.)  Leonor explained:  "I went from practicing dentistry to managing dentistry, because I can't practice dentistry anymore."  (R.32-2, Leonor Dep. 77, Pg. ID #883.)

### C.    Appellants' Claims Handling Under The Three Policies.

#### 1.    Leonor's Submissions.

After becoming disabled, Leonor timely filed a claim for Total Disability benefits and submitted the required forms.  Indeed, on or about June 5, 2009, Leonor timely submitted an Attending Physician's Statement.  (R.34-3, Attending Physician's Statement, Pg. ID##1021-22.)  Additionally, Leonor submitted to

Appellants a Claimant's Statement dated June 11, 2009. (R.36-2, Claimant's Statement, Pg. ID ##1122-24). In the Claimant's Statement, Leonor stated that he was unable to "perform dental services," that he was "receiving management dividends from [his] 6 dental offices," and disclosed a list of his doctors and medications. (*See id.*)

Donna Brennan, general manager of Stoneybrook Dental Center, where Leonor practiced dentistry full time immediately prior to his disability, submitted to Appellants an Employment Statement dated June 11, 2009. (R.36-3, Employment Statement, Pg. ID ##1126-27). The Employment Statement listed, in part:

- Leonor's "job title/major job duties" were listed as "Dentist – Provide Dental Services";

- Leonor owned 100% of the employer;

- Leonor worked four days per week, eight hours per day, and was paid through May 2009 "revenue based salary for revenue rec'd prior to 3/10/09."

(*Id.*) On about June 15, 2009, Brennan submitted Appellants' "Job Description" form, providing *inter alia* the following:

- Job Title: Dentist

- Nature of Business: Perform Dental Services

- Job duties in order of importance: Dentistry at 34 hours per week

- Number of persons supervised: 12

- Claimant "cannot perform dentistry"

- Physical requirements: "full day of performing dentistry – cannot alternate sitting-standing"

(R.36-4, Job Description, Pg. ID ##1129-31.)

### 2. Appellants Initially Determined Leonor is Totally Disabled.

On June 23, 2009, Appellants acknowledged receipt of Leonor's benefits claim under the Three Policies, and appointed Jodie Duval, Disability Benefits Specialist, to handle his claim. (R.37-2, Acknowledgement Letter, Pg. ID ##1138-39.) Duval was to "thoroughly analyze" the file, contact Leonor personally to "discuss the claim in detail," and inform him "what other information or documentation [was] necessary to completely assess and evaluate the claim" under the Three Policies. (R.37-2, Acknowledgement Letter, Pg. ID #1138.) Appellants stated that his "[b]enefit payments cannot be made until all necessary information is received and reviewed." (*Id.*)

Duval logged information of her action in handling Leonor's claim in an "Action Plan" that contained, in part, the following:

- Occupation Title: "Dentist"

- Pre-disability Occupation Title: "Dentist; 100% Owner"

- Self-reported Substantial & Material Occupational Duties: "perform dental services, 34 hours per week"

- Substantial & Material Occupational Duties Validated? "Yes"

- Post-disability Occupation Title: "None"

(R.37-3, Action Plan, Pg. ID ##1141-44.)

Upon review, Appellants determined that Leonor was totally disabled. Indeed, by letter dated July 2, 2009, Appellants advised Leonor that "there is reasonable support for you meeting your policies' definitions of Total Disability beginning on March 10, 2009." (R.37-4, 7/2/09 Duval Letter, Pg. ID ##1146-47.)

Appellants sent Leonor a letter dated November 16, 2009, updating him on the status of his claim for benefits and informing him that more information would be requested. (R.37-5, 11/16/09 Update Letter, Pg. ID ##1149-52.) Here, Appellants stated their "wish to take this opportunity to provide you with your policies' definitions of disability…" and thereafter restated the "total disability" definitions in each of the Three Policies. (R.37-5, 11/16/09 Update Letter, Pg. ID ##1149-50.) Appellants further explained that for claim evaluation, to determine if he met the Policies' definitions of disability, they needed to verify the following:

    a) any restrictions and limitations you may have;

    b) the duties you were performing in the occupation in which you were engaged at the time disability began; and

    c) how those restrictions and limitations affect the performance of those duties.

(R.37-5, 11/16/09 Update Letter, Pg. ID #1150.)

In compliance with Appellants' information requests, Brennan provided supplemental information in November 2009, regarding Leonor's pre-disability dental services, compensation, physical requirements for performing dentistry, etc. (*See* R.38-2, Supplemental Questionnaire, Pg. ID ##1159-63.) In Claimant's

Supplemental Statement and Individual Disability Status Update forms sent on November 23, 2009, Leonor disclosed to Appellants *inter alia* the following information:

- Leonor performed management duties at his dental office, compensated as an employee biweekly $15,000 beginning in July 2009;

- Leonor remained unable to physically practice dentistry on patients;

- Leonor returned to work full time (35 hours per week) but not in his previous occupation, stating he returned to an "entirely new position – cannot see patients" and "started managerial duties".

(R.38-3, Claimants Supplemental Statement, Pg. ID ##1165-67.)

By letter dated December 16, 2009, Appellants thanked Leonor for meeting personally with their area Field Representative, acknowledged receipt of the supplemental information provided by Leonor and Brennan and confirmed Appellants' understanding that Leonor "returned to work in July 2009, performing management duties." (R.38-4, 12/16/09 Duval Letter, Pg. ID ##1169-70.) This letter also noted that Appellants issued Leonor checks for Total Disability benefits under the Three Policies. (*Id.*)

Appellants' Senior Vocational Rehabilitation Consultant, Robert Rodecker, investigated Leonor's pre-disability occupational duties and completed a report dated December 21, 2009. (R.34-4, Rodecker Report, Pg. ID ##1024-25; *see also* R.35-2, Spar Dep. 105-109, Pg. ID ##1058-59.) Rodecker confirmed that Leonor

worked full time (35 to 40 hours per week) as a dentist.  (R.34-4, Rodecker Report, Pg. ID ##1025.)

### 3. Appellants Secretly Began a Plan to Cancel Benefits Under the 8090 and 2074 Policies.

In May 2010, unknown to Leonor, Duval initiated a plan to challenge Leonor's total disability status under the 8090 and 2074 Policies; Spar agreed with this plan, noting that it "[a]ppears insured has been working in some capacity since early fall 2009."[4]  (R.38-5, Activity Log, Pg. ID #1172.)

Based on an internal review by Appellants' Vocational Rehabilitation Consultant, as noted by Duval on June 15, 2010, the consultant confirmed that information provided by Leonor's office is consistent with his reported occupational duties of a general dentist.  (R.38-6, Activity Log, Pg. ID ##1174).  Duval further noted in the June 15 activity log that "[n]o additional info needed to verify pre-dis[ability] General Dentistry duties; will determine if any additional info is needed to verify current duties."  (*Id*.)  The June 15 entry further demonstrated that on December 10, 2009, Appellants knew Leonor performed full time administrative duties, managing his offices.  (*Id*.)  Duval stated in the June 15 activity log that "as planned" Appellants would evaluate Leonor's claim under the "residual disability" and not "total disability" provisions of the 8090 and 2074

---

[4]  Duval reported to Steven J. Spar, whom was the Director of Claims during the relevant time period and had ultimate responsibility for the claim.  (*See* R.35-2, Spar Dep. 17-20, 68-72, Pg. ID ##1036, 1048-49.)

Policies, because Leonor "has been working in some capacity since prior to Fall of 09, in what appears to be a gainful occ." (*Id*.)

By letter dated June 15, 2010, Duval informed Leonor that Appellants determined he had "been working and engaged in ***another*** occupation since sometime prior to the Fall of 2009." (R.39-2, 6/15/10 Duval Letter, Pg. ID ##1183 (emphasis added).) Because Appellants determined that Leonor had worked in "another occupation" after his disability, Appellants evaluated his claim according to the Residual Disability provisions of the 8090 and 2074 Policies. (*Id*.) Appellants' finding that Leonor was engaged in "another occupation" did not affect Leonor's total disability status under the 0113 Policy. Appellants continued to pay Total Disability benefits under all Three Policies.

By letter dated September 27, 2010, Appellants reaffirmed their reclassification of Leonor (from totally disabled to residually disabled) under the 8090 and 2074 Policies, stating again that "you are engaging in ***another occupation*** which is gainful." (R.39-3, 9/27/10 Duval Letter, Pg. ID #1189 (emphasis added).) Appellants informed Leonor in the September 27 letter: "Of note, in review of the available information, ***there is reasonable continued support at this time for you meeting the Total Disability definition of [the 0113 Policy***]". (R.39-3, 9/27/10 Duval Letter, Pg. ID #1190 (emphasis added).)

### 4.    Appellants Began Efforts To Challenge Medical Basis for Plaintiff's Inability to Practice Dentistry.

Having ceased Leonor's benefits under the 8090 and 2074 Policies, Appellants next questioned whether Leonor was actually disabled from his occupational duties of practicing dentistry.[5]   Indeed, Appellants stated in an October 29, 2010 letter that Leonor's continued claim of "progressive symptoms . . . are inconsistent with cervical disc disease and cannot be accounted for from any other medical condition."  (R.39-4, 10/29/10 Duval Letter, Pg. ID #1200.)   They concluded that "there is no evidence for a neurological or musculoskeletal disorder" and in order to understand any medical limitations "which continue to impact the performance of your occupational duties, we are pursuing a second opinion at this time."  (*Id.*)

On November 17, 2010, Appellants required Leonor to be subjected to an independent medical examination, which was conducted by Dr. Carol E. Holden on December 3, 2010; Dr. Holden released her IME report on December 15, 2010. (R.39-5, Holden IME, Pg. ID ##1203-13.)  Dr. Holden found, *inter alia*, that that: 1) Leonor's psychological results were consistent with persons who experience chronic pain; 2) the managerial work Leonor performs might be just busy work he creates for himself; and most importantly 3) she does not believe Leonor is

---

[5] Curiously, Appellants attempt to challenge the medical basis for Leonor's disability came shortly after Appellants received Leonor's 2008 and 2009 tax returns.  (R.39-3, 9/27/10 Duval Letter, Pg. ID #1189.)

feigning his injury and that he cannot return to practicing dentistry at this time. (*See id.*)

Appellants attempted to persuade Dr. Holden to reconsider her findings, but she refused to change her medical opinion. (R.39-6, 1/9/11 Holden Addendum, Pg. ID ##1215-16.)

### 5.    Appellants Shift the Focus of their Challenge of Leonor's Total Disability Benefits under the 0113 Policy.

After Dr. Holden's independent medical review confirmed Leonor's medical disability, Appellants approached Leonor's total disability status from a different angle: the definition of his occupation at the time of his disability.[6]

Appellants' internal documents, obtained in discovery by Leonor, describe the initiation by Duval of a "[p]roactive claim rev[iew]" two years after Leonor's disability. (R.39-7, Proactive Review, Pg. ID #1218.) Here, for the first time, Duval stated that Appellants have sufficient documentation to conclude that Leonor's occupation is "Dentist and Owner/Operator." (*Id.*) She stated further that because "he has been engaging in Owner/Operator duties, managing his 6 dental practices, since ~ 7/09 to present, it is reasonable to conclude at this time that he meets the policy's definition of [Residual Disability]." (*Id.*) On July 20,

---

[6]  In fact, as soon as Leonor's IME confirmed he was disabled, Duval initiated an audit. (*See* R.40-3, 10/31/11 Walsh Letter, Pg. ID #1239 (noting that "Duval wrote to [Leonor] on January 24, 2011…indicating that she was arranging for an audit to be performed at [his] offices.").)

2011, Spar agreed "with [the] reasonableness of [her] assessment" and took special note of Leonor having "purchased and/or opened two (2) additional dental practices since his date of disability." (*Id*.)

By letter dated August 10, 2011, Appellants notified Leonor: "we are administering your claim going forward under the Residual Disability provisions" of the 0113 Policy. (R.39-8, 8/10/11 Duval Letter, Pg. ID #1220.) This letter (over two years after Leonor's disability) stated that "*it is our determination that at the time of disability, you were engaging in Dental duties and also in Owner/Operator duties managing your businesses*. As you continue to engage in the Owner/Operator duties of the occupation you were engaged in at time of disability" the claim would be handled under the 0113 Policy's residual disability provision. (R.39-8, 8/10/11 Duval Letter, Pg. ID #1221 (emphasis added).)[7]

Duval sent Leonor a letter dated September 8, 2011, reaffirming Appellants' determination, stating "*we have determined it best to define you (sic) occupation as Dentist and Owner/Operator at time of disability. We understand that post-disability, you have been unable to perform dentistry*." (R.40-2, 9/8/11 Duval Letter, Pg. ID #1233 (emphasis added.)

---

[7]  Appellants' August 2011 determination of the broadened scope of Leonor's March 2009 occupation was based on information Appellants had available since the time Leonor applied for benefits, two years before.

### 6.     Leonor Appealed Appellants' Decisions Internally to No Avail.

On October 31, 2011, Appellants upheld their decision to cancel Leonor's benefits, noting that "we agree that you have ceased performing hands on dentistry since the date of your disability.  However, we do not believe it is reasonable to conclude that you were not involved in the management and/or running your multiple businesses in the pre-disability period.  We likewise do not believe it is reasonable to conclude that your activities associated with such were not important, or material and substantial, to the operation or your businesses or the income they produced."[8]     (R.40-3, 10/31/11 Walsh Letter, Pg. ID #1242.) Appellants further stated in this letter that in "evaluating your occupational duties with respect to your claim, it is important that we determine the duties that are material, substantial, or important, in generating your total income."  (*Id*.)  Also, "the intent of your policy is to replace income which you have lost as the result of your disability . . . ."[9]  (*Id*.)

---

[8]  Notably, this letter fails to explain how operation of his additional businesses (and their income) in any way relates to the occupational disability policy Leonor purchased to insure his occupation as a dentist.

[9]  This incorrectly suggests that an insured that increases his or her income from other means after a disability would not be entitled to total disability benefits for the occupation that the insured is disabled from.

### D.    Leonor's Complaint.

Leonor filed a three-count complaint on December 5, 2012.  (R.1, Complaint, Pg. ID ##1-6.)  Count I accused Appellants of Breach of Contract for breaching the Three Policies by terminating monthly benefits in 2011.  (R.1, Complaint, Pg. ID #4.)    Count II accused Appellants of Fraud and Misrepresentation by representing to Leonor that the Three Policies covered his occupation as a dentist.  (R.1, Complaint, Pg. ID #5.)   Count III sought a declaratory judgment that Leonor is totally disabled under the terms of the Three Policies.  (R.1, Complaint, Pg. ID ##5-6.)

### E.    The District Court's Dismissal of Count II.

Appellants moved to dismiss Count II, arguing *inter alia* that Leonor could not maintain an action for fraud when the alleged fraud is based upon the duties owed by the insurance contracts.  (R.9, Motion to Dismiss, Pg. ID ##34, 37-40.)  Leonor opposed Appellants' motion.  (R.14, Opposition to Motion to Dismiss, Pg. ID ##52-65.)   The crux of Leonor's argument was that Appellant had taken contrary positions; prior to issuing the policy they represented that the total disability provisions of the policies covered Leonor's occupational duties as a dentist but after becoming disabled Appellants claim that the total disability provisions to not provide coverage for his inability to practice dentistry.  (*See* R.14, Opposition to Motion to Dismiss, Pg. ID ##57-58.)  Thus, because Appellants took

the position that the policies did not promise coverage for disability as a dentist, Leonor's claim was separate and distinct from the contract claim.  (*See id*.)

The district court granted the motion to dismiss.  (R.16, Dismissal Opinion, Pg. ID ##188-95.)  More specifically, the district court ruled that Leonor's fraud claim arose "solely from Defendants' contractual obligation to pay Plaintiff benefits according to the Policies if he became disabled.  The alleged fraudulent statement is indistinguishable from the Policy terms that Plaintiff argues were breached.  Therefore, the fraud claim does not arise under a breach of a legal duty that is separate and distinct from the alleged breach of the Policies."  (R.16, Dismissal Opinion, Pg. ID #193.)[10]

## F.    The District Court's Summary Judgment Opinion.

After discovery, both parties filed motions for summary judgment (R.29, R.31), responses (R.43, R.44), and replies (R.45, R.47).  In a well-reasoned thirty-two page written opinion, the district court granted Leonor's motion for summary judgment and denied Appellants' motion.  (R.48, SJ Opinion, Pg. ID ##1395-1426.)  The district court first determined that Leonor's "'Occupation' entailed two

---

[10]  Leonor sought statutory penalty interest on his claim pursuant to Count II and his prayer for relief.  (R.1, Complaint, Pg. ID ##5-6)  In the district court's summary judgment opinion, it determined (without briefing or argument by either party), that Leonor was not entitled to penalty interest.  (R.48, SJ Opinion, Pg. ID ##1424-25.)  As explained herein, both decisions were incorrect, as Leonor's fraud claim should have survived his breach of contract claim (Argument IV, *infra*) and he is entitled to penalty interest (Argument III, *infra*).

thirds of his time spent performing dentistry and one third of his time managing and overseeing his practices." (R.48, SJ Opinion, Pg. ID #1410.)

Next, the district court thoroughly analyzed the insurance policies. In doing so, the district court noted that courts have taken two different approaches with the same or similar total disability provisions. (R.48, SJ Opinion, Pg. ID #1411.) The district court admitted that both parties' interpretations were reasonable and therefore the policy was ambiguous, which was bolstered by the fact that various courts have interpreted the policies differently. (R.48, SJ Opinion, Pg. ID #1414.) Pursuant to Michigan law, the district court then favored the interpretation that maximized coverage for the insured. (R.48, SJ Opinion, Pg. ID ##1414-15.) Thus, because Leonor cannot practice dentistry, he was entitled to "Total Disability" benefits under the Three Policies. (R.48, SJ Opinion, Pg. ID #1425.)

The district court refused to award Leonor penalty interest. (R.48, SJ Opinion, Pg. ID ##1424-25.)

### G.    The District Court's Reconsideration Opinion.

Appellants moved to have the district court reconsider its summary judgment opinion. (R.50, Motion for Reconsideration, Pg. ID ##1428-48.) Appellants brazenly argued that the district court erred by not abiding by a "basic rule of grammar" in its summary judgment opinion. (R.50, Motion for Reconsideration, Pg. ID ##1434-35, 1439, 1447.)

The district court denied Appellants' motion. (R.55, Reconsideration Opinion, Pg. ID ##1502-07.) First, the district court concluded that Appellants' waived or forfeited their "grammar argument" because they raised it "for the first time in their reply." (R.55, Reconsideration Opinion, Pg. ID #1505.)

Second, the district court ruled that it considered—either expressly or by implication—this grammar argument and rejected it because it "lack[ed] merit." (*Id*.) More specifically, the district court: (1) noted that "courts around the country" take two approaches when "interpreting disability insurance policies with similar, and in many cases the same, language"; (2) determined that the provisions were ambiguous; and (3) therefore, in accordance with Michigan Law, construed the policies most favorably to the insured to maximize coverage. (R.55, Reconsideration Opinion, Pg. ID ##1503-06.) Thus, Leonor was—and still is— "Totally Disabled."

## SUMMARY OF THE ARGUMENT

Even though Leonor cannot practice dentistry, Appellants ceased paying Total Disability benefits because he can perform managerial duties. Leonor sued Appellants, alleging breach of contract (Count I) and fraud (Count II) and sought damages in the form of Total Disability benefits under the Three Polices plus penalty interest. The district court dismissed Count II. The district court granted Leonor's motion for summary judgment on Count I, concluding Leonor was totally disabled under the Three Policies. The district court denied penalty interest in that same summary judgment opinion. These three rulings are before this Court.

***This Court should affirm summary judgment for Leonor on Count I.*** To convince this Court that an error occurred below, Appellants argue that the district court did not abide by a basic rule of grammar; if it did it would have concluded that the use of the definite article "the" and the plural noun "duties" in the phrase "the important duties" unambiguously means "all the important duties."

This Court should affirm the district court's conclusion that Leonor is totally disabled under the Three Policies. First, the district court properly ruled that this "grammar argument" was waived because it was first presented in a Reply brief; therefore, this Court should also conclude it has been waived. Second, there is no merit to the argument, as the district court's decision gave proper effect to the definite article "the." The district court properly concluded that Leonor was totally

disabled under the Three Policies because he could no longer perform dentistry and is therefore unable to perform "the important duties" of his Occupation.

In doing so, the district court accepted Appellants' recharacterized definition of Occupation and correctly concluded that both interpretations of what "the important duties" meant were reasonable, so the Three Policies were ambiguous. Indeed, under Appellants' interpretation (of their own policy in which they chose the language), Appellants could always escape paying Total Disability benefits if it could muster up just one important duty that the insured could still perform. The district court correctly concluded that Leonor's interpretation—which came directly from cases analyzing the same or similar policies—was reasonable because an insured would be totally disabled where he cannot engage in his regular profession because he cannot perform the majority of his important duties. The district court also correctly noted that Michigan law favors coverage when an insurance policy is ambiguous.

Moreover, this Court should affirm even if it accepts Appellants' argument that the provision means "all of the important duties" because Leonor cannot practice dentistry, which is the only (and therefore all) important duty of his Occupation.

***This Court should reverse summary judgment in favor of Appellants as it pertains to penalty interest and award Leonor penalty interest.*** Although the

district court correctly granted Leonor's motion for summary judgment, the district court misinterpreted Michigan law when it concluded that Leonor was not entitled to penalty interest.  The plain language of the Michigan statute imposes penalty interest on an insurance company that wrongfully denies benefits to a party ***directly*** entitled to benefits under the policy, such as an insured like Leonor.  It is only when the benefits were wrongfully denied to a third-party entitled to coverage under the policy that a court can consider whether the claim is reasonably in dispute to deny penalty interest.

***The district court should not have dismissed Count II.***  The district court erred when it denied Leonor the opportunity to pursue his fraud claim without first or concurrently ruling on his breach of contract claim.  Leonor's fraud claim seeks redress for the representations (*i.e.*, that the policies covered his occupation as a licensed Dentist) that induced him to purchase the Three Policies.  Now that Appellants claim the policies do not cover his occupation as a licensed dentist, the fraud claim is distinct from the breach of contract claim.  Said another way, if it is determined that Leonor is not totally disabled under the Three Policies even though he can no longer practice dentistry, then this Court should revive his fraud claim that seeks redress for the now-false representations that the policy covered his occupation as a dentist.  To the extent this Court agrees with the district court that Leonor is entitled to Total Disability benefits, Leonor's fraud claim is moot.

# ARGUMENT

## I.    Legal Standards.

### A.    Standard of Review.

A district court's decision to grant summary judgment is reviewed de novo. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

A district court's decision to grant a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is also reviewed de novo. *Stew Farm, Ltd. v. Natural Res. Conservation Serv*, 767 F.3d 554, 558 (6th Cir. 2014). A motion to dismiss under Rule 12(b)(6) only be granted when it clear that the plaintiff can prove no set of facts that would entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The complaint is construed in the light most favorable to the plaintiff and the court must accept as true all of the plaintiff's well-pled factual allegations. *Id.*

### B.    Application of State Law.

In diversity actions, federal courts apply the substantive law of the forum state. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008). This rule applies to actions arising from disputes over insurance contracts. *Talley v. State Farm Fire*

*and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  Thus, Michigan law governs the resolution of this dispute.

In these circumstances, decision of the forum state's highest court are controlling, but if an issue has not been decided by the state's highest court, the federal court "may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.  This rule applies regardless of whether the appellate court decision is published or unpublished."  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (internal quotation and citation omitted).

### C.    Interpretation of Insurance Contracts.

The proper interpretation of a contract and the legal effect of the contract are questions of law.  *DeFrain v. State Farm. Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012).  Under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract."  *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005).  Provisions of an insurance policy that are clear and unambiguous must be construed and applied as written.  *Id*.

"The language of the [insurance policy] is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided."  *Singer v. Am. States Ins.*, 631 N.W.2d 34, 37 (Mich. 2001).  An insurance policy is to be

read "as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 782 n 11 (Mich. 2003). However, "'[a]n insurance policy [is] to be interpreted so that it is not merely a delusion to the insured. Courts avoid interpreting insurance policies in such a way that an insured's coverage is never triggered and the insurer bears no risk.'" *Ile v. Foremost Ins. Co.*, 809 N.W.2d 617, 622 (Mich. Ct. App. 2011) (quoting Black's Law Dictionary (9th ed.)), reversed on other grounds in 823 N.W.2d 426.

"An insurance contract is ambiguous, if, after reading the entire contract, its language reasonably can be understood in differing ways." *Farm Bureau Mut. Ins. v. Blood*, 583 N.W.2d 476, 478 (Mich. Ct. App. 1998). If a Court finds the policy ambiguous, however, Michigan law requires the Court to construe the policy "most favorably to the insured to maximize coverage." *Carlyon v. Mut. of Omaha Ins. Co.*, 559 N.W.2d 407, 408 (Mich. Ct. App. 1996). This presumption allows a court to grant summary disposition for the insured by determining as a matter of law which interpretation must be adopted. *See id*.

## II.     The District Court Correctly Concluded That The Three Policies Provided "Total Disability" Coverage After Leonor Was No Longer Able To Perform Dentistry.

The crux of Appellants' appeal is that "[u]nder basic rules of grammar, the definite article 'the' placed before a plural noun make the phrase '***the*** important du***ties*** of Your Occupation' grammatically and functionally identical to the phrase

'all of the important duties of Your Occupation.'"  (6R.24, Appellants' Brief, pp.32-33 (emphasis in original).)[11]  Appellants then contend that because Leonor is able to perform "management and administrative duties" he is not totally disabled and this Court should enter summary judgment in their favor.  (*See* 6R.24, Appellants' Brief, p.28.)[12]

As will be explained below, the district court properly concluded that Appellants' "grammar argument" was waived because they first made this argument in the district court in a Reply brief.  Nonetheless, Appellants' arguments are without merit; the district court—like numerous other courts interpreting the same or similar insurance provision—properly determined the provision is ambiguous and therefore should, per Michigan law, be interpreted to maximize coverage for the insured.  But under any interpretation this Court should affirm because Leonor is totally disabled because he cannot practice dentistry.

---

[11]  This "grammar argument" appears in each of Appellants four arguments. (6R.24, Appellants' Brief, pp.24-43 (Argument 1 is grammar argument spanning almost twenty pages), pp.43-46 (Argument 2 is similar grammar argument), p.47 (Argument 3 relies on grammar argument), p.62 (Argument 4 mentions grammar argument).)

[12]  While Appellants briefly mention this in the Summary of the Argument, Appellants entirely ignore the facts relating to Leonor in their Argument.  Indeed, Appellants do not even mention Leonor's dentistry duties or even mention any of his dental or non-dental management, administrative, and/or investments, much less attempt to argue what is and is not "important."  Appellants should not be allowed to make these arguments for the first time in reply.

## A.    Appellants Waived The "Grammar Argument".

Appellants spent the vast majority of their brief focusing on an argument that has not been properly preserved for review by this Court.  The general rule is that an argument must be raised before the district court or the argument has waived and cannot be reviewed on appeal.  *Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996).  This "rule eases appellate review by having the district court first consider the issue" and "ensures fairness to litigants by preventing surprise issues from appearing on appeal."  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (internal quotations and citations omitted).  There are limited circumstances where an appellate court may consider an argument that has been waived, but the discretion to do so is rarely exercised as the predominant consideration is whether the argument was properly raised before the district court.  *Id*. at 552-53.

As the district court correctly acknowledged when it denied Appellants' motion for reconsideration, Appellants first raised the "grammar argument" in their reply to their summary judgment motion.  (R.45, Def. SJ Reply, Pg. ID ##1364-69; R.55, Reconsideration Opinion, Pg. ID #1505).  Appellants even conceded in a footnote that the grammar argument was first raised in their reply to their summary judgment motion.   (R.50, Motion for Reconsideration, Pg. ID #1437, n.3).  However, issues raised for the first time in a reply brief are waived and not

properly preserved for appeal.  *Scottsdale Ins. Co.*, 513 F.3d at 553-54 (finding that an issue raised for the first time in motion to alter, amend, or reconsider declaratory judgment was untimely and thus waived on appeal); *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 676 (6th Cir. 2006) (concluding that an issue cannot be raised for the first time in a reply brief because the opposing party does not have an opportunity to respond).  Thus, this Court should not consider Appellants' grammar argument.

Complicating matters further, Appellants' argument presents an issue of first impression as Michigan courts have yet to consider Appellants' grammar argument as it pertains to a similar set of disability insurance policies.[13]  Thus, Appellants are asking this Court (a Federal Appellate court) to decide an issue that was neither briefed nor decided by the Eastern District of Michigan and that has not been decided by any Michigan Appellate court.  Because Appellants failed to properly preserve this issue, this Court should decline to decide the issue on that ground instead of attempting to speak for Michigan courts.  *See All Seasons Climate Control, Inc. v. N.L.R.B.*, 540 F. App'x 484, 488-89 (6th Cir. 2013); *United States v. Aparco-Centeno*, 280 F.3d 1084, 1087-88 (6th Cir. 2002).

---

[13]  Michigan courts have examined a similar set of insurance policies on at least one prior occasion.  *Carlyon*, 559 N.W.2d at 445-46.  In *Carlyon*, the insured was an emergency room physician that was able to still work as a prison physician after becoming disabled.  *Id*. at 445.  He was, nonetheless, totally disabled, and summary judgment was properly granted for the insured, because he "was unable to perform the material and substantial duties of an emergency room physician."  *Id*. at 446.

**B.    The District Court Properly Concluded that Leonor Is Totally Disabled.**

If this Court elects to consider the merits of Appellants' unpreserved argument, the "grammar argument" lacks merit as the district court correctly determined that the Three Policies are ambiguous because their language can reasonably be understood in differing ways.

**1.    The District Court Correctly Analyzed the Law and Facts.**

In the district court's well-reasoned summary judgment opinion, the district court first discussed Leonor's occupation, finding that, prior to his cervical spine disc herniation, Leonor practiced dentistry 35 to 40 hours per week and spent an additional 15 to 25 hours per week managing/overseeing all his businesses, both dental and non-dental. (R.48, SJ Opinion, Pg. ID #1396.) Indeed, the district court noted that in addition to owning dental practices, Leonor "invested in and owned supply companies and various commercial and residential real estate." (*Id.*)

Next, the district court discussed, and quoted the relevant provisions from, the "three disability income insurance policies" that Leonor applied for with his "Occupation" being "dentist." (R.48, SJ Opinion, Pg. ID #1397.) The district court then analyzed each policy separately.

As it pertains to this appeal, the district court concluded Leonor "is 'unable to perform the important duties of [his] Occupation" under the 0113 policy and is

therefore totally disabled. (R.48, SJ Opinion, Pg. ID ##1409-16.)[14] First, the district court determined that Leonor's "'Occupation' entailed two thirds of his time spent performing dentistry and one third of his time managing and overseeing his practices." (R.48, SJ Opinion, Pg. ID #1410.) Next, the district court focused on the language of the policies and noted that courts "appear to take one of two approaches when interpreting disability insurance policies with similar, and in many cases the same, language." (R.48, SJ Opinion, Pg. ID #1411.)

The district court rejected the approach taken by courts that interpret similar total disability provisions to mean that an insured must be unable to perform *all* of his important duties to be considered totally disabled. (*Id*.) The district court noted that these courts concluded that the ability to perform "just one important duty precludes a determination of total disability." (*Id*.)

The district court adopted a second approach that courts take. These courts have found same or similar provisions ambiguous and conclude that an insured is not precluded from total disability benefits because the insured is able to continue in "some" of his pre-disability duties. (R.48, SJ Opinion, Pg. ID #1412.) For example, the district court noted the Eleventh Circuit's opinion in *Giddens v. Equitable Life Assur. Soc. of U.S.*, 445 F.3d 1286, 1298 (11th Cir. 2006) that

---

[14] The district court followed its same reasoning when it determined that Leonor is totally disabled under the other two policies. (*See* R.48, SJ Opinion, Pg. ID ##1416 -20.)

explained that "most" or "majority" of the important duties is a reasonable interpretation if an insured is unable to engage in his regular occupation as a result of his inability to perform most or the majority of those duties. (*Id*.)

The district court thoroughly explained why it found this second approach "more convincing." (R.48, SJ Opinion, Pg. ID #1413.) In doing so, the district court noted that a recent Eastern District of Michigan recently took this approach in *Stoneman v. Paul Revere Life Ins. Co*., No. 12-15334, 2013 WL 6768616 (E.D. Mich. Dec. 20, 2013).[15] The district court agreed that the provisions at issue were ambiguous because both parties' interpretations were reasonable, and the fact that different courts have taken different views bolstered the finding of ambiguity under Michigan law. (R.48, SJ Opinion, Pg. ID #1414.) The district court also noted that this interpretation does not nullify the residual disability clause; rather, the two provisions together create a "continuum of disability," as noted by other courts. (R.48, SJ Opinion, Pg. ID ##1414-15.) Moreover, had Appellants meant "all important duties," they could have simply stated such. (*Id*.) Finally, Michigan law

---

[15] Curiously, Appellants failed to mention *Stoneman* in their opening brief even though the district court heavily relied upon this case in its summary judgment opinion and the case involved the same insurance provision from the same insurance company, represented by the same counsel, as the insurance provisions at issue here. *See* MRPC 3.3(a)(2). Paul Revere appealed the decision in *Stoneman* to this Court but it appears that they voluntarily dismissed that appeal. *See* Sixth Circuit Docket No. 14-1231.

requires the court to construe ambiguous policies most favorably to the insured to maximize coverage.  (*Id*.)

Thus, the district court properly determined that Leonor is totally disabled because he can no longer practice dentistry.

### 2.     Appellants' Arguments Are Without Merit.

### a.     Appellants' "grammar argument" fails.

The ambiguity in the Three Policies exists, in part, because the definite article "the" is used to modify "important duties," but the important duties were not defined in the Three Policies (nor was Occupation, which is also a generic term).  Without being defined by the policies, the term "important duties" is subjective and not verifiable.  Indeed, the plural nouns in the numerous examples provided by Appellants are capable of objective verification, which is drastically different than the case at hand.  For example, in *Frazier v. Pioneer Am., LLC*, 455 F.3d 542, 546 (5th Cir. 2006), the primary defendants can be identified to determine whether all of the defendants meet the necessary criterion for exemption from the jurisdiction of the Class Action Fairness Act.[16]

Likewise in *Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*, 655 F.3d 358, 361 (5th Cir. 2011), the claims in the cause of action can be readily determined by examining the complaint to evaluate whether the alleged conduct

---

[16]  The dozen or so additional cases cited by Appellants analyzing the phrase "the primary defendants" are inapposite for this same reason.

34

forms a basis for all of the claims.  Similarly, in *Patricca v. The Zoning Bd. of Adjustment of the City of Pittsburgh*, 590 A.2d 744, 751-52 (Pa. 1991), the residents of the neighborhood are objectively verifiable to determine whether all of the residents of the neighborhood will be allowed to park in the proposed parking lot.  Appellants reliance on additional cases (6R.24, Appellants' Brief, Pg. ID ##36-43) suffers from this same flaw.

However, here, the group of "important duties" is ambiguous because it is subjective and not independently verifiable.  Appellant (Paul Revere) has previously presented and lost this same grammar argument in *Stoneman* for this very reason.  In *Stoneman*, like here, Paul Revere argued that there was "no ambiguity" in the policy and that plaintiff "must be unable to perform ***all*** of the important duties of his occupation in order to be deemed totally disabled."  2013 WL 6768616, at *13 (emphasis in original).  In doing so, Paul Revere advanced a very similar grammar argument—and the Court rejected it:

> In effort to bolster its argument that 'the important duties' must be read to mean all important duties, Paul Revere quotes another court's 'common-sense analogy:' '[I]f one were to ask a third-grade student to name 'the' states of the United States, 'the only way that Johnny would get a 100 on that test is to name all 50 states....'' While entertaining, this analogy fails to consider that the names of the fifty states making up the United States ***are capable of objective verification whereas the same cannot be said of the important duties of one's occupation***.

*Id*. at *13 n.7 (emphasis added, case citation omitted).

To support its grammar argument here—both in the lower court and on appeal—Paul Revere abandons the aforementioned 50 states analogy and replaces it with a "simple analogy" regarding the elements of contract law, which are again objectively verifiable unlike the important duties of one's occupation. (*See* R.50, Motion for Reconsideration, Pg. ID #1442; 6R.24, Appellants' Brief, p.35.) Defendants' analogy—and entire argument based on rules of grammar—should be rejected for the same reasons as *Stoneman* did so.

Indeed, several other courts have concluded that the use of the definite article "the" creates ambiguity when it is referring to a group that is not objectively verifiable. *See Minority Employees of the Tenn. Dept. of Employment Sec. v. Tennessee*, 901 F.2d 1327, 1332 (6th Cir. 1990) (examining how the definite article can be ambiguous when referring to a group of defendants that cannot be defined with particularity); *Fed. Gasohol Corp. v. Total Phone Mgmt, Inc.*, 24 F. Supp. 2d 1149, 1151 (D. Kan. 1998) (finding ambiguity in a contract because the forum selection clause in the contract allowed more than one court to have proper jurisdiction and venue over the dispute); *United States v. Maryland Bank & Trust Co.*, 632 F. Supp. 573, 579 (D. Md. 1986) (finding ambiguity in a statute because of the placement of the definite article "the").

Appellants interpretation of the phrase "the important duties" is unobtainable and creates the misperception of "some of" and "all of" that Appellants complain

about.  As previously stated, Appellants' interpretation is unclear as it has not been definitely defined, but it appears that Appellants' interpretation is the equivalent of a flying pig, something that can never be obtained so that Appellants have the option of always being able to deny Total Disability coverage under the Three Policies.  Indeed, under Appellants strained interpretation of its own policy (a policy they drafted and chose the language even though the same language has been disputed for a decade), Appellants can emasculate the Total Disability provision by simply mustering up one important duty to avoid paying Total Disability benefits (which is even easier when Appellants subjectively define the insured's Occupation during the claims process).[17]  However, "Courts avoid interpreting insurance policies in such a way that an insured's coverage is never triggered and the insurer bears no risk.'"  *Ile*, 809 N.W.2d at 622.

The subjective nature of what is and is not important also helps account for the split on whether total disability policies require the insured to be unable to perform "all" or "some of" the important duties.  It is not that the policies require

---

[17]  To illustrate how Appellants' interpretation can never be obtained, and the inherent subjectivity involved in the language Appellants chose to use in their policies, consider the duty of hand washing.  An individual having their teeth worked on by a dentist would certainly consider it an important duty for the dentist to wash his or her hands before the dentist puts his or her hands in the individual's mouth.  But including washing one's hands as one of "the important duties" effectively frustrates the insurance policies' purpose and renders the policies illusory as Appellants would have the ability to artificially inflate "the important duties" and always be able to identify one arguably important duty that the insured is still able to perform.

any less, but that the reference point of one's own interpretation affects whether you view the words "all" or "some of" as having been added. And, the split among the various courts gives "credence to the position that more than one reasonable interpretation . . . exists." *Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.*, 519 N.W.2d 864, 869 n.8 (Mich. 1994), overruled on other grounds in *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776 (Mich. 2003).

Here, the phrase "the important duties" is ambiguous and subject to differing interpretations (and can also vary depending on the "Occupation" of the insured at the time of the disability, as Appellants choose to define it), which results in drastically different outcomes. The district court found that ***both*** Leonor's and Appellants' interpretations of the phrase "the important duties" were reasonable, so the insurance policies were ambiguous. (R.55, Reconsideration Opinion, Pg. ID #1506.) Michigan's presumption favoring coverage when an ambiguity exists was then applied, which required adoption of Leonor's interpretation over Appellants'. *Erickson v. Citizens Ins. Co.*, 550 N.W.2d 606, 608 (Mich. Ct. App. 1996).

Thus, the district court properly determined the Three Policies were ambiguous and correctly concluded Leonor was totally disabled because he cannot practice dentistry.

**b.** **The district court gave effect to the definite article "the" when it reached its conclusion that the Three Policies were ambiguous.**

Appellants argument that the district court failed to give effect to the word "the" (6R.24, Appellants' Brief, pp.43-46) is part and parcel of its grammar argument, and fails for the same reasons stated above.  For example, Appellants reliance on *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000) is misplaced because the article "the" was being used to modify the singular term "cause" in the phrase "the proximate cause."  Thus, contrary to an employee that has several subjective important duties, "the proximate cause" can reasonably be interpreted to mean "the one most immediate, efficient, and direct cause preceding an injury."  *Id*.  Indeed, the court in *Robinson* "recognize[ed] that 'the' is a definite article, and 'cause' is a singular noun, it is clear that the phrase 'the proximate cause' contemplates one cause."  *Id*. at 319.

Similarly, Appellants' reliance on *State Farm Fire & Cas. Co. v. Old Republic Ins. Co*., 644 N.W.2d 715, 717 (Mich. 2002) is misplaced.  There, the court noted that "MCL 500.3123(1)(b) excludes property damage from no-fault property protection coverage if the property owner, the person's spouse, or a relative of either residing in the same household, is 'named in ***a*** property protection insurance policy'."  *Id*.  Again, unlike important duties, both the persons at issue,

39

and whether they are named in a policy, is objectively verifiable.  Thus, here, the district court properly concluded that the Three Policies were ambiguous.

> **c.**   **The district court's opinion adds "some of" as a way to explain the differences between Leonor's and Appellants' interpretations.**

Appellants argue that the district court's holding improperly added the phrase "some of" or "one or more" to the Total Disability provision and that courts, under Michigan law, cannot add terms to a contract that do not exist. (6R.24, Appellants' Brief, pp.46-47.)  Appellants' argument is entirely misplaced. While the district court inserted the words "some of" and "all" to demonstrative each parties' proposed interpretation, the substance of the district court's opinion is that "***most***" or the "***majority***" of the important duties is "a reasonable interpretation ***if an insured is unable to engage in his regular occupation as a result of his inability to perform most or the majority of those duties***."  (*See* R.48, SJ Opinion, Pg. ID ##1412-13; R.55, Reconsideration Opinion, Pg. ID #1506 (both citing *Giddens*, 445 F.3d at 1298) (emphasis added).) Thus, because Leonor cannot engage in his regular occupation as a dentist, he is totally disabled.

Moreover, Appellants argument is nothing more than a repeat of their grammar argument since they admit that they are asking this Court to add the phrase "all" to the contract.  But here, these are Appellants' policies that they drafted.  They had the option to include the phrase "all" if they wanted to, but they

did not. Leonor was not afforded such luxury. There is even more reason to construe the policies against Appellants here because, as discussed below, Appellants have been disputing this same provision language for a decade and have purposefully not made it clear by adding the word "all."

In any event, the district court's end conclusion was that both interpretations were reasonable, as demonstrated by its reasoned opinion and the split in legal authority interpreting similar provisions. (*See* R.55, Reconsideration Opinion, Pg. ID #1506.) Thus, the provision should be construed, consistent with Michigan law, to maximize coverage for the insured.

> ### d.    The district court's holding does not render the residual disability clauses in the Three Policies superfluous.

Appellants complain that the district court's holding renders the residual disability clauses in the Three Policies meaningless. (6R.24, Appellants' Brief, pp.47-62.) There is not merit to this contention because the Total Disability and Residual Disability clauses create "a continuum of disability" when read together. (R.48, SJ Opinion, Pg. ID #1415 (citing *Giddens*, 445 F.3d at 1300).) Indeed, as the district court quoted some of the reasoning from *Giddens*:

> If the insured is unable to perform only "one or more" of many material occupational duties, then the insured would not be totally disabled. Where the insured . . . is unable to perform most or the majority (but not all) of the material duties and thus cannot engage in his regular occupation, the insured nevertheless is totally disabled from his regular occupation, and this interpretation does not nullify

the Residual Disability clause. At some point, a line must be drawn where the disability becomes so severe, and affects such a large percentage of the insured's material and substantial duties, that the disability is total rather than residual. The language of the Residual Disability clause does not suggest where that line should be drawn and certainly does not require that it be drawn only where [the insurance company] suggests.

(*Id.*)

Appellants' authority does not dictate a different result, and in fact, explains why the district court and *Giddens* were correct for concluding that their interpretations do not render the residual provision meaningless. For example, Appellants rely on several cases they were defendants in[18] to support its argument that to be totally disabled the insured must not be able to perform any of the important duties of his or her occupation. (6R.24, Appellants' Brief, pp.48-50.)

First, it is worth noting that Appellants and their insured have been disputing the same or similar occupational disability provisions for a decade and they have chosen to not insert the term "all" to the Total Disability provision, or define what duties are important, or define precisely what the insured's Occupation is. Appellants' intentional use of vague and subjective terms that allow themselves to wiggle out of paying total disability benefits should not be allowed.

---

[18]   *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 590 (8th Cir. 2002); *Conway v. Paul Revere Life Ins. Co.*, No. Civ. 5:99CV150-T, 2002 WL 31770489 (W.D.N.C. Dec. 5, 2002); *Karlin v. Paul Revere Life Ins. Co.*, 742 F. Supp. 2d 1253, 1267 (D. Kan. 2010).

Second, Appellants reliance on these cases is misplaced. In *McOster*, the Eighth Circuit actually reversed and determined that the insured **was** entitled to total disability benefits. 279 F.3d at 590. Indeed, even though the insured was able to return to work, he was not able to return to his management position, and therefore totally disabled. *Id.* Here, Leonor was not able to return to practicing dentistry and is therefore totally disabled, no matter how you define his occupation.

In *Conway*, the court determined the insured was not entitled to total disability benefits for his occupation as a mover/driver because of the medical evidence and a surveillance videotape showing him performing strenuous activity:

> Plaintiff had the ability to build a deck onto his home and to participate in the Coast Guard Auxiliary. In the spring of 1998, he had performed two months of heavy work continuously on his vacant lot preparing it for the building of his home. He could pull, drag, lift, carry, throw, twist, turn, crawl, bend, jump, jog, walk, sidestep, navigate steep and unlevel slopes while carrying heavy objects, use a chain saw on uneven ground, build and maintain a bonfire, lay drainage and other pipe, and drive a large truck loaded with building materials. All of this work was performed without any hint of discomfort or limitation and the medical records do not show that this work led to treatment for the allegedly disabling conditions.

*Conway*, 2002 WL 31770489, at *11. Here, Appellants' requested IME confirmed Leonor cannot perform dentistry and this is not disputed.

Finally, in *Karlin*, the insured practiced interventional and diagnostic radiology prior to disability, but could only practice diagnostic radiology after his

disability. 742 F. Supp. 2d at 1258. At summary judgment, the court simply could not rule whether the insured was totally disabled on the record before it because it did not know the insured's pre-disability duties. *Id*. at 1267. Karlin is inapposite because here the record is clear and it remains undisputed that Leonor cannot practice dentistry, which constituted "the important duties" of his occupation prior to his disability.

Appellants failed to mention another case they were involved in, *Kerwin v. Paul Revere Life Ins. Co*., 6 F. App'x 233, 240 (6th Cir. 2001), where this Court affirmed the district court's decision granting summary judgment for the insured. There, this Court concluded that the insured was totally disabled under the same or similar policies because the insured could not practice law as a trial attorney, even though the insured subsequently took a position as a judge. *Id*. at 240. This Court agreed that the insured's inability to maintain the high stress and pressure of criminal trials rendered him unable to perform the important duties of a trial attorney.[19] *Id*. at 239 n.4.

For these same reasons, Appellants reliance on *Canu v. Nat'l Life Ins. Co*., No. 12-12838, 2013 WL 1883534 (E.D. Mich. May 6, 2013) is misplaced. There,

---

[19] Clearly a judge is required to perform some of the important duties of a trial attorney, such as legal research and writing and attending court. Thus, this Court's opinion in *Kerwin* is consistent with the district court opinion and *Giddens* that conclude an insured is totally disabled when he or she is unable to engage in his or her regular occupation as a result of his inability to perform most or the majority of those duties.

the insured, a chiropractor, was not totally disabled because he was performing his same pre-disability duties, just seeing fewer patients than before his disability. *Id.* at *6. Again, Leonor has not practiced dentistry since becoming disabled and therefore *Canu* is inapposite.[20]

Thus, under either parties interpretation of "the important duties," there will still be instances where the insured is able to perform one or more of the important duties and the residual disability clause will apply instead of the total disability clause. But here, Leonor cannot maintain his profession as a dentist and therefore he is entitled to Total Disability benefits.

### C. Summary Judgment For Leonor Is Warranted Even If This Court Accepts Appellants' Interpretation.

Even if this Court agrees with Appellants' "grammar argument," *i.e.*, the "Total Disability" provisions unambiguously mean that to be totally disabled one

---

[20] Additionally, the district court rejected the analysis in *Canu* because the *Canu* court's finding that an insured must be unable to perform all of his important duties to be totally disabled was based on *Miller v. Nw. Mut. Life Ins. Co.*, 392 F.3d 973, (8th Cir. 2004), which contained very different total disability provisions. (R.48, SJ Opinion, Pg. ID ##1411-12.) In *Miller*, one total disability provision stated: "The Insured is totally disabled when unable to perform the principal duties of the regular occupation, *and* not working in *any* capacity in the Business" and another total disability provided, in relevant part: "***If the insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled***." *Id.* at 975 (emphasis in original). Thus, *Miller* is inapposite and the district court properly called the reasoning of *Canu* into question for relying on *Miller*.

must be unable to perform "all" or "each and every" important duty of one's occupation, then summary judgment is still proper for Leonor.

Here, it is undisputed that Leonor cannot practice dentistry. Moreover, the record is clear that Leonor purchased the disability policies from Appellants to insure his occupation as a licensed dentist. (R.33-2, Application No. 162258, Pg. ID #944; R.33-3, Application No. 33527, Pg. ID #977; R.34-2, Application No. 025830090721, Pg. ID #1016.) Further, prior to becoming disabled, Leonor worked full time practicing dentistry. (R.32-2, Leonor Dep. 66, 75, Pg. ID ##881, 883; R.43, Appellants' Counter-Statement of Material Facts, Pg. ID #1282; R.34-4, Rodecker Report, Pg. ID ##1024-25; R.35-2, Spar Dep. 105-109, Pg. ID ##1058-59; R.29-12, Unum Report of Findings, Pg. ID #542.)

Here, the duties of a licensed dentist, as defined by statute, were the ***only***— and therefore "all"—important duties of Leonor's occupation. Indeed, "important" is commonly defined "as having serious meaning or worth: deserving or requiring serious attention." Merriam-Webster's Online Dictionary.[21] Whereas, "secondary" is commonly defined as "subordinate or subsequent," and "auxiliary" is defined as "aiding or supporting; subsidiary; supplementary."[22] Leonor's interpretation of the phrase "the important duties" are those duties that a licensed

---

[21]  http://www.merriam-webster.com/dictionary/important
[22]  Black's Law Dictionary (9th ed.).

dentist is required to perform.  It is undisputed that Leonor is no longer able to perform all, or even some, of these duties (R.48, SJ Opinion, Pg. ID #1410).[23]

Although notably absent from Appellants' brief on appeal, Appellants implicitly allege that there is at least one important duty that Leonor is still able to perform and presume that their interpretation is the only correct interpretation, despite the district court concluding otherwise.  While he has been able to continue managing and administering his dental and non-dental investments, these duties are auxiliary or secondary to Leonor's duties as a licensed dentist because they are subordinate and only aide or support Leonor's dentistry practice.  *See Shapiro v. Berkshire Life Ins. Co.*, No. 98 Civ. 2452 AGS, 1999 WL 566372 (S.D.N.Y. Aug. 3, 1999) (the plaintiff's ownership interests in his and other dental practices and the fact that he performed managerial and administrative duties for those practices did "not alter the fact that those activities were not the primary functions of [the] plaintiff's occupation").  Even Dr. Holden's IME, which was conducted at Appellants' request, supports concluding that the non-dental aspects of Leonor's

---

[23]  Although Appellants have not argued on appeal that a fact issue exists as to what constitutes all the important duties of a dentist, those duties can be defined as the "diagnosis, treatment, prescription, or operation for a disease, pain, deformity, deficiency, injury, or physical condition of the human tooth, teeth, alveolar process, gums or jaws, or their dependent tissues, or an offer, undertaking, attempt to do, or holding oneself out as able to do any of these acts."  Mich. Comp. Laws § 333.16601(d).  It is undisputed that Leonor cannot perform those duties.  And, perhaps more significantly, only a licensed dentist can perform the acts delineated in § 16601(d).  Mich. Comp. Laws § 333.16601(c).

occupation were subordinate.  (*See* R.39-5, Holden IME, Pg. ID #1206 (stating "I got the sense that he has created busy work for himself").)

Thus, these duties cannot be considered important duties to preclude coverage.  Leonor is therefore totally disabled and summary judgment is proper under Appellants' strained interpretation.

Alternatively, this Court should affirm because the district court should have defined Leonor's occupation as a licensed dentist as opposed to "two thirds of his time spent performing dentistry and one third of his time managing and overseeing his practices." [24]  (R.48, SJ Opinion, Pg. ID #1410.)  Indeed, the undisputed record reflects that Leonor practiced dentistry full-time prior to disability.  Notably, Appellants—with the same information they had when they recharacterized his "Occupation" as a "Dentist and Owner/Operator"—initially determined his "Occupation" was a "Dentist" only but changed their determination of "Occupation" once they received Leonor's tax returns.

Thus, the district court should have determined that Leonor's occupation was a Dentist only.  *See Carlyon*, 559 N.W.2d at 447 (granting summary judgment for the insured because the court must interpret the insured's "'occupation' in the reasonable manner most favorable to the insured."). With Leonor's "Occupation"

---

[24]  This Court may affirm on alternative grounds that are supported by the record. *See Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011); *Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009).

defined as dentistry, he is totally disabled under both parties' interpretation of the contract.

## III.  The District Court Erred In Concluding That Leonor Was Not Entitled To Penalty Interest As The Claim Was Not Reasonably In Dispute.

Although the district court correctly granted Leonor's motion for summary judgment, the district court grossly misinterpreted Michigan law when it concluded that Leonor was not entitled to penalty interest because the claim was reasonably in dispute.  Mich. Comp. Laws § 500.2006(4) provides in relevant part:

> If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract insurance.  If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith determined by a court of law.

As the plain language of § 500.2006(4) clearly indicates, insurance claims are divided into two categories:  (1) a party, such as an insured, that is directly entitled to benefits under the insurance policy, and (2) a third-party that can receive benefits under the insurance policy.  *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 359-60.  If an insurance claim is not timely paid to an insured, the penalty interest applies even if the claim was reasonably in dispute.  *Griswold Properties, LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (2007) (special panel).  It is only when

the insurance claim is to a third-party tort claimant that the claimant may not receive the penalty interest if the claim was reasonably in dispute. *Id.*

In its opinion, the district court relied on *Jones v. Jackson Nat. Life Ins. Co.*, 819 F. Supp. 1372, 1379 (W.D. Mich. 1993), and *Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F. Supp. 2d 767, 774 (E.D. Michigan 2000), to support its reasoning that Leonor was not entitled to penalty interest as the claim was reasonably in dispute. However, these cases are distinguishable as both involve a third-party claimant that was seeking benefits under the insurance policy at issue. In *Jones*, the plaintiff was the insured's wife who sought benefits under a life insurance policy issued to her husband. 819 F. Supp. at 1373-74. In *Kmart Corp.*, the plaintiff sought coverage under an insurance policy that had been issued by the defendant to one of the plaintiff's manufacturers. 88 F. Supp. 2d at 768-69. Because neither of the respective plaintiffs were the insured, it was improper to apply these cases to allow Appellants to avoid the penalty interest that must be assessed under § 500.2006(4). It is undisputed that Leonor is the direct insured under the Three Policies. (*See* 6R.24, Appellants' Brief, p.16.) As such, Leonor is automatically entitled to penalty interest regardless of whether the claim was reasonably in dispute.

In any event, the district court also erred because Leonor's claim was not reasonably in dispute. Appellants initially determined Leonor's "Occupation" was

"Dentist" only.  After Appellants received Leonor's tax returns—and after they unsuccessfully challenged the medical basis for Leonor's disability—they recharacterized his "Occupation" to a "Dentist and Owner/Operator" (with information Appellants had from Leonor's initial claim submissions).  Thus, Leonor's claim was not reasonably in dispute and Appellants improperly terminated benefits.  *McOsker*, 279 F.3d at 590 ("in determining whether an insurer has properly terminated benefits that it initially undertook to pay out, it is important to focus on the events that occurred between the conclusion that benefits were owing and the decision to terminate them.").  This Court should award penalty interest.

## IV.    The District Court Also Erred By Denying Leonor The Opportunity To Pursue His Fraud Claim Where He Alleged That Appellants Deceived Him.

Shortly after the lawsuit was initiated, the district court granted Appellants' motion to dismiss Leonor's fraud claim for failure to state a claim.  (R.16, Dismissal Opinion, Pg. ID ##188-95.)  The district court dismissed the fraud claim after incorrectly concluding that the "fraud claim arises solely from [Appellants'] alleged failure to fulfill a contractual obligation and not from a breach of a separate and independent duty."  (R. 16, Dismissal Opinion, Pg. ID #194.)

To establish a claim of fraudulent misrepresentation in Michigan, a plaintiff must establish:

> (1) defendant made a material representation; (2) the representation
> was false; (3) defendant knew, or should have known, that the
> representation was false when making it; (4) defendant made the
> representation with the intent that plaintiff rely on it; (5) and plaintiff
> acted on the representation, incurring damages as a result.

*Foreman v. Foreman*, 701 N.W.2d 167, 175 (Mich. Ct. App. 2005). Although the

general rule is that "fraud requires a misrepresentation about the past or present,"

*Lawrence M. Clarke, Inc. v. Richco Constr. Inc.*, 803 N.W.2d 151, 162 (Mich.

2011), "an action for fraud can be based on an unfulfilled promise to perform in

the future if the promise was made with a present undisclosed intent not to

perform," *New Start, Inc. v. Bristol West Ins. Co.*, No. 274085, 2007 WL 1207099

(Mich. Ct. App. Apr. 24, 2007).

Although Leonor's fraud and breach of contract claims are intertwined, the

claims are distinct causes of action, which the district court failed to appreciate.

Leonor has alleged that Appellants represented that the policies at issue would

cover his occupation as a dentist and that Appellants promised to pay benefits if

Leonor became disabled and could no longer work as a dentist. Now, Appellants

have taken the position that the policies do not cover his occupation as a dentist

and are attempting to deny Total Disability benefits. The alleged

misrepresentations are distinct from the policies at issue because they are what

caused Leonor to purchase and renew the policies, which is sufficient to withstand

a motion to dismiss. Said another way, the fraud claim should have survived the

motion to dismiss and been decided concurrently with the breach of contract claim. In the event that the district court determined—or this Court determines—that Leonor is not totally disabled even though he can no longer practice dentistry, then Leonor should be allowed to pursue his fraud claim. To the extent that the district court determined—or this Court affirms—that Leonor is totally disabled, then the fraud claim could be dismissed as moot, but only at that point.

In *Craft Agency, Inc. v. Rickard*, No. 250500, 2005 WL 2086132 (Mich. Ct. App. Aug. 30 2005), the Michigan Court of Appeals held in an unpublished opinion that it was improper for the trial court to grant summary judgment for failing to state a claim upon which relief can be granted. *Id*. In his counterclaim, the defendant alleged that the plaintiff fraudulently misrepresented that it would pay commissions to the defendant under an employment agreement. *Id*. The defendant spent considerable time and effort obtaining a significant account for the plaintiff, but the plaintiff refused to pay the defendant the commission for the account that he had earned. *Id*. Like the case at hand, a claim of fraud had been adequately pleaded as "liability for fraud may be predicated on statements that relate to future events when the statements were intended to be and accepted as representations of fact which involved matters peculiarly within the knowledge of the speaker."

In this case, it was peculiarly within Appellants' knowledge, and only within Appellants' knowledge, whether the Three Policies would cover Leonor as a dentist if he were to become disabled. It was these representations that Leonor relied when he purchased and renewed the policies. In light of Appellants' failure to provide benefits under the policies, it has now become apparent that the representations about the coverage provided by the insurance policies were false. All that would remain is whether Appellants intended to deceive Leonor when the representations were made, which is a question of fact that is inappropriate to determine in a dispositive motion. *Fiebing v. Erickson*, No. 298433, 2011 WL 3118801 (Mich. Ct. App. July 26, 2011) (dispositive motions are "generally inappropriate where motive and intent are at issue or where credibility of a witness is crucial"); *Pearson v. Flood Prof'l, Inc.*, No. 298359, 2012 WL 205799 (Mich. Ct. App. Jan. 24, 2012) ("[i]t is the function of the trier of fact to resolve issues regarding credibility and intent"); *Betts v. Fletcher*, No. 266613, 2006 WL 1751823 (Mich. Ct. App. June 27, 2006) (granting dispositive motions "is improper when intent or credibility is at issue").

Stated another way, Leonor seeks redress for the misrepresentations that lead to his purchase of the Three Polices in his fraud claim, which is distinct from the redress sought in the breach of contract claim. Appellants cannot be allowed to make false misrepresentations about their insurance policies and escape liability by

limiting Leonor's sole cause of action to breach of contract.  As such, this Court must reverse the district court's dismissal of Leonor's fraud claim if this Court reverses the district court's grant of summary judgment on Count I.

## CONCLUSION

For the foregoing reasons, Leonor respectfully requests that this Court affirm the district court's grant of summary judgment in Leonor's favor but reverse to the extent that the district court denied penalty interest.  Leonor also requests that this Court reverse the district court's dismissal of his fraud claim if this Court reverses the district court's grant of summary judgment.

Dated: December 8, 2014          Respectfully submitted,

By:  */s/  MICHAEL M. JACOB*
MICHAEL M. JACOB (P15391)
JEFFREY D. WILSON (P56376)
3001 W. Big Beaver Road, Ste. 624
Troy, Michigan  48084

## CERTIFICATE OF SERVICE AND FILING

In compliance with FRAP Rule 25 and L.R. 25 I hereby certify that on this 8th day of December 2014, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Sixth Circuit this BRIEF OF THE APPELLEE/CROSS- APPELLANT, and further certify that opposing counsel will be notified of this filing through the Notice of Docket Activity generated by this electronic filing.

Respectfully submitted,

By: */s/ MICHAEL M. JACOB*
MICHAEL M. JACOB (P15391)
JEFFREY D. WILSON (P56376)
3001 W. Big Beaver Road, Ste. 624
Troy, Michigan  48084

*Counsel for Appellee Cross-Appellant*

COUNSEL SERVED:
K. Scott Hamilton
DICKINSON WRIGHT
500 Woodward Avenue
Suite 4000
Detroit, MI 48226

313-223-3500

*Counsel for Appellant Cross-Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B)-(C) and 6 Cir. R. 32(a), the undersigned certifies that this brief complies with the type limitations of these Rules.

1.     Exclusive of the exempted portions in Fed. R. App. P. 32(a)(7)(i) and (iii), the brief contains 12,795 words in its entirety.

2.     The brief has been prepared in 14-point Times New Roman typeface using Microsoft Word.

3.     If the Court so requests, the undersigned will provided an electronic version of the brief and/or a copy of the word or line printout.

4.     The undersigned understands a material misrepresentation in completing this certificate of the Fed. R. App. P. 32(a)(7)(B)-(C) and 6 Cir. R. 32(a), may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

By:  */s/  MICHAEL M. JACOB*
MICHAEL M. JACOB (P15391)
JEFFREY D. WILSON (P56376)
3001 W. Big Beaver Road, Ste. 624
Troy, Michigan  48084

## ADDENDUM -- DESIGNATION OF LOWER COURT DOCUMENTS

| District Court Record # | Description of Document | Pg. ID Range |
|---|---|---|
| R.1 | Complaint | 1-6 |
| R.9 | Motion to Dismiss | 34, 37-40 |
| R.14 | Opposition to Motion to Dismiss | 52-65 |
| R.16 | Dismissal Opinion | 188-95 |
| R.29 | Defendants Motion for Summary Judgment | 244-85 |
| R.29-12 | Motion for Summary Judgment Attachment #12 | 542 |
| R.31 | Leonor's Motion for Summary Judgment | 818-56 |
| R33-2, R.33-3 | Sealed Exhibit Attachments | 881, 883, 906-42, 944-47, 951-75, 977-80 |
| R.34-2, R.34-3, R.34-4 | Sealed Exhibit Attachments | 998, 1016-17, 1021-22, 1024-25 |
| R.35-2 | Sealed Exhibit Attachment | 1036, 1048-49, 1058-59 |
| R.36-2, R.36-3, R.36-4 | Sealed Exhibit Attachments | 1122-24, 1126-27, 1129-31 |
| R.37-2, R.37-3, R.37-4, R.37-5 | Sealed Exhibit Attachments | 1138-39, 1141-44, 1146-47, 1149-52 |
| R.38-2, R.38-3, R.38-4, R.38-5, R.38-6 | Sealed Exhibit Attachments | 1159-63, 1165-67, 1169-70, 1172, 1174 |
| R.39-2, R.39-3, R.39-4, R.39-5, R.39-6, R.39-7, R.39-8 | Sealed Exhibit Attachments | 1183, 1189-90, 1200, 1203-13, 1215-16, 1218, 1220-21 |
| R.40-3 | Sealed Exhibit Attachment | 1233, 1239, 1242 |
| R.43 | Defendants' Sealed Response | 1265-1340 |
| R.44 | Leonor's Sealed Response | 1341-58 |
| R.45 | Defendants' Sealed Reply | 1359-70 |
| R.47 | Leonor's Sealed Reply | 1383-94 |
| R.48 | Summary Judgment Opinion | 1395-1426, |
| R.50 | Motion for Reconsideration | 1428-48 |
| R.55 | Opinion and Order | 1502-07 |
| R.57 | Judgment | 1512-13 |

| R.61 | Notice of Cross Appeal | 1519 |