Nos. 14-2120 and 14-2152

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

**LOUIS LEONOR, DDS,**

  **Plaintiff/Counter Defendant-Appellee and Cross-Appellant,**

v.

**PROVIDENT LIFE AND ACCIDENT COMPANY, a Tennessee Corporation; and PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts Corporation,**

  **Defendants/Counter Plaintiffs-Appellants and Cross-Appellees.**

_____/

On appeal from the U.S. District Court for the Eastern District of Michigan, Case No. 2:12-cv-15343 Hon. Robert H. Cleland

## CORRECTED THIRD BRIEF ON APPEAL BY APPELLANTS AND CROSS-APPELLEES

K. Scott Hamilton (P44095)
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48225
(313) 223-3500
Counsel for Defendants/Counter
Plaintiffs-Appellants and
Cross-Appellees

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...............................................................................iv

I.    DEFENDANTS' RESPONSE TO PLAINTIFF'S CROSS -APPEAL........3

    A.    Counter-Statement of Facts ..................................................................3

           1.    Plaintiff's Applications For The Policies ..................................3

           2.    Plaintiff's Claim for Benefits and Defendants' Investigation Into His Occupational Duties .............................4

           3.    The Policies Do Not Define "Your Occupation" As Dentistry ...................................................................................9

    B.    Summary of the Argument Regarding Dismissal of Plaintiff's Fraud Claim .......................................................................................11

    C.    Argument ...........................................................................................14

           1.    Standard of Review ..................................................................14

           2.    The District Court Properly Dismissed Plaintiff's Fraud Claim Under Fed. R. Civ. P. 12(b)(6) ......................................15

                  a.    The District Court Correctly Held That Fraud and Misrepresentation Cannot Be Based On the Breach of Contractual Duties ..................................................16

                  b.    Any Representation About The Circumstances Under Which Benefits Would Be Paid Is a Non-Actionable Statement of Future Conduct, Not an Actionable Statement About a Past or Existing Fact ...........................................................................21

                  c.    Plaintiff's Complaint Did Not Allege Any Promise With A Present Intent Not to Perform .........................23

          d.     Plaintiff Could Not Have Reasonably Relied On Any Agent's Representation About the Scope of the Policies ...................................................................25

      3.     Defendants Agree That the District Court Erred in Holding that 12% Penalty Interest is Unavailable ................28

II.    DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE ......................29

    A.    Plaintiff's "Waiver" Argument is Meritless .....................................29

      1.     There Can Be No Forfeiture Where The District Court Acknowledged That Defendants Presented, and the District Court Considered and Ruled Upon, Defendants' Grammar Argument in Its Summary Judgment Opinion .......30

      2.     The grammatical structure was not a new *issue*; it was merely an additional *argument* why the Policies are not ambiguous...............................................................................34

      3.     Even if the "grammar argument" were deemed a new issue that was not properly presented in the district court, it is properly considered on appeal........................................37

      4.     Plaintiff Was Given Full Opportunity to Address, and Did Address, the Grammar Argument in the District Court ..................................................................................39

      5.     The Authority Plaintiff Relies Upon Is Mis-Cited and Inapposite ...........................................................................40

      6.     Plaintiff Is Estopped from Claiming On Appeal That Defendants Forfeited the "Grammar Argument"...................42

    B.    The Lower Court Erred in Finding the "Total Disability" Definition Ambiguous ......................................................................44

      1.     The Definite Article "The" Before "Important Duties" Grammatically Means *All* The Important Duties...................44

      2.     The District Courts' Construction of the "Total Disability" Definition Is Redundant With, and Renders Superfluous, the "Residual Disability" Definition.................56

III.    CONCLUSION .............................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Adams v. Macon County Greyhound Park, Inc.*, 829 F.Supp.2d 1127 (M.D. Ala. 2011) ................................................................................................. 47

*Arrigo's Fleet Serv., Inc. v. Aetna Life & Cas. Co.*, 54 Mich. App. 482, 221 N.W.2d 206 (1974) ................................................................................. 49

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................................................... 14, 24, 25

*Blackmon-Mallory v. U.S. Capitol Police Bd.*, 575 F.3d 699 (D.C. Cir. 2009) 31, 32

*Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 378 N.W.2d 558 (1985) ................................................................................. 16

*Brock v. Consolidated Biomedical Labs*, 817 F.2d 24 (6th Cir. 1987) .................... 16

*Carlyon v. Mut. of Omaha Ins. Co.*, 220 Mich. App. 407, 559 N.W.2d 407 (1996) ....................................................................................................... 58

*Casey v. Auto-Owners Ins. Co.*, 273 Mich. App. 388, 729 N.W.2d 277 (2006) ................................................................................................. 17, 19

*Cooper v. Auto Club Ins. Co.*, 481 Mich. 399, 751 N.W.2d 443 (2008) .......... 21, 26

*Craft Agency, Inc. v. Rickard*, 2005 Mich. App. LEXIS 2131 (Mich. App., Aug. 30, 2005) .................................................................................... 24, 25

*Cummins v. Robinson Township*, 283 Mich. App. 677, 770 N.W.2d 421 (2009) ....................................................................................................... 23

*Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 733 N.W.2d 102 (Mich. Ct. App. (2006) ............................................................................. 28

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014) ............................................. 14

*Federal Gasohol Corp. v. Total Phone Management, Inc.*, 24 F. Supp. 2d 1149 (D. Kan. 1998) ............................................................................ 50, 53

*Ford v. Nicks*, 866 F.2d 865 (6th Cir. 1989) ........................................................ 51, 52

*Gallenstein v. United States*, 975 F.2d 286 (6th Cir. 1992) ..................................... 34

*German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 2d 958 (W.D. Mich. 2007) ............................................................................................................ 21

*Greco v. Livingston County*, - F.3d - , 2014 U.S. App. LEXIS 24109 (6th Cir., Dec. 19, 2014) ........................................................................................... 33

*Green v. Super Shuttle Int., Inc.*, 2010 U.S. Dist. LEXIS 7456 (D. Minn., Jan. 29, 2010) .................................................................................................... 47

*Gregory v. Missouri Pac. Railroad Co.*, 32 F.3d 160 (5th Cir. 1994) .................... 43

*Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 741 N.W.2d 549 (2007) ................................................................................................ 29

*Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1957) ......................................... 16

*Haviland v. Metropolitan Life Ins. Co.*, 2012 U.S. Dist. LEXIS 88228 (E.D. Mich., June 26, 2012) ........................................................................................... 21

*Herman v. Berrien Co.*, 481 Mich. 352, 750 N.W.2d 570 (2008) .......................... 44

*Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505 (8th Cir. 2012) .................... 36

*Huron Tool and Eng. Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541 (1995) ....................................................................... 17

*In Re Osweiler*, 346 F.2d 617 (C.C.P.A. 1965) ..................................................... 36

*Information Systems and Networks Corp. v. City of Detroit*, 281 F.3d 1220 (11th Cir. 2002) ...................................................................................................... 35

*Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144 (3rd Cir. 2009) ........................... 45

*Kerwin v. Paul Revere Life. Ins. Co.*, 6 F. App'x 233 (6th Cir. 2001) (unpublished) ......................................................................................................... 57

*Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980) ..................................................................................................................... 16

*Lawrence M. Clarke, Inc. v. Richco Construction, Inc.*, 489 Mich. 265, 803 N.W.2d 151 (2011)........................................................................................ 21

*Lexicon, Inc. v. Sefeco Ins. Co. of America, Inc.*, 436 F.3d 662 (6th Cir. 2006) 37, 40, 41

*Lincoln Elec. Co v St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672 (6th Cir. 2000).................................................................................................................. 38

*Lukas v. McPeak*, 730 F.3d 635 (6th Cir. 2013) ...................................................... 14

*McFarland v. Henderson*, 307 F.3d 402 (6th Cir. 2002) .......................................... 37

*Merchants Publishing Co. v. Maruka Mach Corp of America*, 800 F. Supp. 1490 (W.D. Mich. 1992) ...................................................................................... 17

*Michaels v. Amway Corp.*, 206 Mich. App. 644, 522 N.W.2d 703 (1994)............. 22

*Minority Employees of the Tenn. Dep't of Employment Security, Inc. v. Tenn. Dep't of Employment Security*, 901 F.2d 1327 (6th Cir. 1990) (*en banc*)................................................................................................... 50, 51, 52

*Moua v. Jani-King of Minn., Inc.,* 613 F.Supp.2d 1103 (D. Minn. 2009) .............. 47

*New Start, Inc. v. Bristol West Insur. Co.*, 2007 W.L. 1207099 (Mich. App., April 24, 2007) ................................................................................................... 24

*Nickoson v. Provident Life and Acc. Ins. Co.*, 2000 U.S. App. LEXIS 538 (6th Cir., Jan. 7, 2000)......................................................................................... 10

*Oliver v. National Life Ins. Co.*, 2010 U.S. Dist. LEXIS 92551 (E.D. Mich., Sept 7, 2010)................................................................................................. 19, 24

*Raspberry v. Capital County Mut. Fire Ins. Co.*, 609 F.Supp.2d 594 (E.D. Tex. 2009) ........................................................................................................... 47

*Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43 (1st Cir. 2011)................................................................................................................... 32

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008)..................... 32, 33, 40

*Shelby County Health Care Co. v. The Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355 (6th Cir. 2009).............................................. 39

*Sigal v. The Gen. American Life Ins. Co.*, 2014 U.S. Dist. LEXIS 141663 (W.D. Pa., Oct. 6, 2014)...................................................................................... 10

*Stoneman v. Paul Revere Life Ins. Co.*, 2013 U.S. Dist. LEXIS 178604 (E.D. Mich., Dec. 20, 2013).................................................................... 49, 57, 58

*Strombeck v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004) ............................... 37

*Stryker Corp. v. XL Ins. America*, 735 F.3d 349 (6th Cir. 2012) ............................. 29

*Sun Valley Foods Co. v. Woods*, 460 Mich. 230; 596 N.W.2d 119 (1999) ............ 46

*Theuerkauf v. United Vaccines*, 821 F. Supp. 1238 (W.D Mich. 1993) ................. 18

*Thurman v. Yellow Freight Systems, Inc.*, 97 F.3d 833 (6th Cir. 1996)................... 41

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) .................................................................................... 51, 52

*United Food & Commercial Workers Union v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341 (6th Cir. 1998).......................................................... 38

*United States v. Clariot*, 655 F.3d 550 (6th Cir. 2011)...................................... 31, 32

*United States v. Jenkins*, 871 F.3d 598 (6th Cir. 1989)............................................ 40

*Universal Title Co. v. United States*, 942 F.2d 1311 (8th Cir. 1991)....................... 37

*Wayne County Neighborhood Legal Serv. v. National Union Fire Ins. Co.*, 971 F.2d 1 (6th Cir. 1992)............................................................................ 38, 39

*Winter v. Minn. Mut. Life Ins. Co.*, 199 F.3d 399 (7th Cir. 1999) ........................... 10

*Woods v. Standard Ins. Co.*, - F.3d - ; 2014 U.S. App. LEXIS 21383 (10th Cir., Nov. 10, 2014) (published) ......................................................................... 46

*Zalusky v. United America Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008).......... 14

**Statutes**

28 U.S.C. §1332(d)(4)(A)(i)(II)(bb) ........................................................... 45

28 U.S.C. §1332(d)(4)(B) ........................................................................ 45

28 U.S.C. §1332(d)(5)(A) ................................................................... 45, 46

M.C.L. 500.2006(4) ...................................................................... 13, 28, 29

**Rules**

Fed. R. App. P. 28.1(c)(3) ......................................................................... 1

Fed. R. App. P. 3 ............................................................................... 51, 52

Fed. R. Civ. P. 12(b)(6) ..................................................................... 12, 15

Fed. R. Civ. P. 8(a)(2) ............................................................................ 14

## INTRODUCTION

Pursuant to Fed. R. App. P. 28.1(c)(3), Section I of this Third Brief on Appeal By Appellants and Cross-Appellees Provident Life and Paul Revere ("Defendants") constitutes Defendants' Brief in Response to Appellee and Cross-Appellant Louis Leonor's ("Plaintiff") Brief on Appeal, and Section II constitutes Defendants' Reply Brief in Support of their First Brief on Appeal.

The Policies in this appeal provide monthly disability income insurance benefits in two circumstances:  If an insured has a disability that renders him unable to perform all of the important duties of his "Occupation" (expressly defined as the occupation the insured is engaged in at the time of disability, not as a "dentist" or any other title or profession), he is entitled to "total disability" benefits.  If, however, the insured remains able to perform some (or one or more) of the important duties of his Occupation, returns to work and incurs a requisite loss of monthly income, he is entitled to "residual disability" benefits to compensate for the reduced income that results from the loss of the ability to perform the other duties.

The district court found it undisputed that Plaintiff's "Occupation" at the time of his March 2009 disability consisted of two-thirds of his time spent practicing dentistry, and one-third spent managing and administering his dental and other businesses.  It was also undisputed that half his pre-disability income came

from practicing dentistry, and the other half from his management and administrative duties. The district court further held it was undisputed that Plaintiff remained able to perform all of the management and administrative duties after his March 2009 disability, and that his monthly income significantly *increased* after he returned to perform those duties of his Occupation.

The district court erred as a matter of law in holding that the definition of "total disability" (the inability to perform "the important duties" of the insured's Occupation) is ambiguous because it can mean either the inability to perform "all of" those duties *or* the inability to perform "some" of those duties. The inability to perform "the important duties" of one's Occupation unambiguously means the inability to perform *all* of those duties because (1) the definite article "the" before the plural noun "important duties" grammatically and unambiguously means "*all* of" the important duties (and therefore cannot also be construed to mean "some of" or "one or more of" them as the district court held), and (2) the district court's holding that "total disability" can mean the inability to perform "some" or "one or more" of the important duties improperly renders it redundant with the Policies' definition of "residual disability."

The district court should have held that "total disability" unambiguously means the inability to perform *all* the important duties of Plaintiff's Occupation as they existed as of March 2009, not just the inability to perform "some" of them.

Because it was undisputed that Plaintiff remained able to perform the management and administrative duties of his Occupation (which consumed one-third of his time and generated one-half of his pre-disability income), this Court should reverse and grant Defendants summary judgment on Plaintiff's claim for "total disability" benefits.  Alternatively, if there is any doubt whether Plaintiff's management and administrative duties were "important duties" of his Occupation, the district court's summary judgment opinion should still be reversed and the matter remanded for that determination.

Because the district court properly held that Plaintiff failed to state a claim for fraud, dismissal of Count II should be affirmed, regardless of whether summary judgment on Count I is reversed.

## I.    DEFENDANTS' RESPONSE TO PLAINTIFF'S CROSS-APPEAL

### A.    Counter-Statement of Facts

Defendants incorporate by reference the Statement of Facts from their First Brief on Appeal ("Defendants' First Brief").  This Counter-Statement of Facts corrects and clarifies various statements in the Brief of the Appellee and Cross-Appellant ("Plaintiff's Brief"), and sets out relevant facts that Plaintiff's Brief omitted.

#### 1.    Plaintiff's Applications For The Policies

Plaintiff applied for Policy Nos. 0113, 8090 and 2074 in 1990, 1995 and 2002, respectively.  (Doc. #48, 4/30/14 Opinion, Page ID #1398-1400).  Although

Plaintiff's fraud claim alleged that when he applied for the Policies "it was represented to him by Provident's and Paul Revere's *agents* that the Policies covered his Occupation (i.e., a dentist)" (Doc. #1, Complaint ¶23, Page ID #5) (emphasis added), each application told him that no agent "has authority . . . to make or alter any contract or policy. (Doc. #15-2, 8090 Policy Application, Page ID #119; Doc. #15-3, 0113 Policy Application, Page ID #154; and Doc.#15-4, 2074 Policy Application, Page ID #185). And although Plaintiff listed "dentistry" as his occupation on the applications, the Policies expressly defined "Occupation" as whatever occupation he was engaged in at the time of disability, and made no reference to "dentistry" or (any other profession). Moreover, each of the Policies was integrated and provided that "[n]o agent may change this Policy or waive any of its provisions." (Doc. #15-2, the 8090 Policy, ¶10.1, Page ID #113; Doc. #15-3, the 0113 Policy, ¶10.1, Page ID #144; Doc. #15-4, the 2074 Policy, Page ID #174).

### 2. Plaintiff's Claim for Benefits and Defendants' Investigation Into His Occupational Duties

Plaintiff applied for benefits on June 11, 2009, saying he was unable to work at all due to back surgery that he had in March, 2009. Defendants began paying Plaintiff monthly benefits for "total disability" under the three Policies based upon his representations in June, 2009 that his pre-disability "job title/major job duties" were "Dentist - Provide Dental Services" (Doc. #36-3, Employment Statement,

Page ID #1126-27), and that he "cannot perform dentistry." (Doc. #36-4, Job Description, Page ID #1129-30). Plaintiff's application for benefits failed to indicate that he also performed managerial and administrative duties prior to March 2009 which, as set out *infra*, Defendants later learned consumed one-third of his time and generated half his income prior to his March 2009 surgery.

On November 16, 2009, Defendants told Plaintiff they needed to determine, among other things, "the duties you were performing in the occupation in which you were engaged at the time disability began. . . ." (Doc. #37-5, Nov. 16, 2009 letter, Page ID #1150).

On November 23, 2009, Plaintiff informed Defendants that he had returned to work and was performing administrative and managerial duties regarding his dental practices. Plaintiff represented that in doing so he was working in an "entirely new position" than that in which he had been engaged prior to his disability. (Doc. #38-3, Supplemental Statement, Page ID #1165-67). When he returned to work, Plaintiff paid himself exactly the same amount of monthly income that he made before his March 2009 surgery, which was $15,000 per month.

Defendants continued to pay Plaintiff monthly benefits, and also continued to investigate his claim by examining precisely what his important pre-disability occupational duties were. Among other things, Defendants retained an

independent expert, Nawrocki Smith, LLP, to examine Plaintiff's pre-disability occupational duties and determine how he spent his time and earned his income prior to March, 2009. In a June 17, 2011 report ("the Nawrocki Report"), Nawrocki Smith concluded that:

> . . . Based upon our analysis of the documentation provided and the representations made by the insured, it appears as though that during the pre-disability time period, the insured was working as a full-time dentist and managing the operations of his multiple dental locations. He was also managing the business operations of his real estate and construction businesses.

(Doc. #29-12, Ex. 11 (6/17/11 Nawrocki Report at Page 11)).

Specifically, the Nawrocki Report uncovered that "prior to his date of disability, [Plaintiff] was working . . . forty (40) hours per week performing dental procedures on patients," and "[i]n addition to the work he performed as a dentist, the insured represented that he was working fifteen (15) to twenty-five (25) hours per week managing/overseeing all his businesses, both dental and non-dental businesses." (Doc. 29-12, Ex. 11 (6/17/11 Nawrocki Report at Page 1)).

The district court concluded that the undisputed evidence "established that Plaintiff's 'Occupation' entailed two thirds of his time spent performing dentistry and one third of his time managing and overseeing his practices," and that "Plaintiff's management and oversight duties generated approximately half of his income" prior to his March 2009 surgery. (Doc. #48, 4/30/14 Opinion, Page ID

#1409-10).    In fact, the district court stated that "Plaintiff agrees that before surgery" in March 2009 he only "derived approximately half of his income from performing dentistry." (Doc. #48, 4/30/14 Opinion, Page ID #1410, n.6).

Only after receiving the Nawrocki Report in June 2011 did Defendants conclude that in addition to practicing dentistry, Plaintiff's important occupational duties as of March 2009 also included management and operation of his practices, from which he undisputedly derived *half* of his income and spent *one-third* of his time.

In an August 10, 2011 letter, Defendants informed Plaintiff that "we requested an independent vendor who specializes in forensic accounting, Nawrocki Smith LLP, to schedule a visit with you to obtain additional information necessary to our ongoing evaluation of your claim," and that "[t]his visit occurred at your accountant's office on April 14, 2011." (Doc. #39-8, Aug. 10, 2011 letter, Page ID #1221).    Defendants further explained that the "information obtained includes financial and occupational duties documentation, dating from both pre and post-disability periods," and that Defendants "have since received the [Nawrocki] report from this visit and have completed our review of the information." (*Id.*).    Based upon that recently-obtained information, Defendants told Plaintiff:

> In review of the information *which is now available to us*, it is our determination that at time of disability, you were engaging in Dental duties and also in Owner/Operator duties managing your businesses.    As

> you continue to engage in the Owner/Operator duties of
> the occupation you were engaged in at the time of
> disability, it is appropriate to handle your claim
> according to the Residual Disability provisions of your
> policy.[1]

(Doc. #39-8, Aug. 10, 2011 letter, Page ID #1221) (emphasis added).

It bears noting that Plaintiff's Brief completely ignores the June 2011 Nawrocki Report, and ignores that Defendants explained to Plaintiff in August, 2011 that it was based on that report that they determined that Plaintiff's "Occupation" as of March 2009 included not just performing dentistry as he represented when he applied for benefits, but that it also involved significant time and income generated from his management and administrative duties.

Moreover, and of course without any record citation (because none exists), Plaintiff's Brief states that Defendants' "August 2011 determination of the broadened scope of Leonor's March 2009 occupation was based on information [Defendants] had available since the time Leonor applied for benefits, two years before." (Plaintiff's Brief at 16, n.7). That statement is demonstrably wrong. Defendants concluded that Plaintiff's "Occupation" as of March 2009 included significant management and administrative duties only after receiving the June 2011 Nawrocki Report.

---

[1] "Residual disability" under the Policies applies where the insured is "unable to perform one or more" of the important duties of his Occupation and incurs at least a 20% loss of income upon return to work. Defendants' First Brief at 3-6.

-8-

Far from being a "secret plan to cancel benefits" or a "shift in focus" (Plaintiff's Brief at 12 and 15), Defendants concluded that Plaintiff's pre-disability "Occupation" involved both practicing dentistry (two-thirds of his time, generating half his income) and management and administrative duties (one-third of his time, generating the other half of his income) only after they completed their investigation in June 2011 regarding Plaintiff's occupational duties as they existed as of March 2009.

### 3.  The Policies Do Not Define "Your Occupation" As Dentistry

Plaintiff's Brief repeatedly, and erroneously, says the Policies insured him solely as a "dentist" because that was the occupation he identified in his applications. (*See*, *e.g.*, Plaintiff's Brief at 2, 17 n.8 and 46). Plaintiff is simply wrong.

The Policies expressly define "Occupation" as whatever occupation "in which You are regularly engaged at the time You become Disabled." (Doc. #48, 4/30/14 Opinion, Page ID #1399-1401). Although Plaintiff's Policy applications said he was a "dentist" with "general duties," the Policies do not define "Occupation" with reference to "dentistry" or any other profession.

The occupation listed in an insured's policy application does not determine the occupation against which disability is decided. "Occupation" is a defined policy term, meaning the occupation an insured is engaged in at the time of

disability. *Winter v. Minn. Mut. Life Ins. Co.*, 199 F.3d 399, 409 (7th Cir. 1999) ("courts interpreting the term 'regular occupation' have held that term to be unambiguous and that disability benefits should be determined from the occupation of the insured at the time of injury or sickness, not the occupation stated in the insurance policy"). *See also id.* at 409 n.14 (collecting cases).

This Court held in *Nickoson v. Provident Life and Acc. Ins. Co.*, 2000 U.S. App. LEXIS 538 (6th Cir., Jan. 7, 2000) (unpublished), that it was "immaterial . . . that [the insured's] occupation is listed on the application as 'registered nurse' . . . [b]ecause the policy is absolutely tolerant of changes in occupation," and therefore "the entry on the application cannot by itself be dispositive. . ." *Id.* at *9. Thus, because "[a]t the time of his injury [the insured] was regularly engaged as a flight nurse . . . [i]t was relative to his duty as a flight nurse that the policy definition of 'total disability' should properly have been applied." *Id.* at *12.

In *Sigal v. The Gen. American Life Ins. Co.*, 2014 U.S. Dist. LEXIS 141663 (W.D. Pa., Oct. 6, 2014), the plaintiff insured argued that because "on his insurance applications he indicated that he was a surgical ophthalmologist . . . he must be considered a surgical ophthalmologist at all times pursuant to the policies." *Id.* at *22. The court rejected that argument, holding:

> . . . [T]he occupation set forth by Plaintiff in the applications do not serve as a conclusive definition or explanation of benefits. . . . The policies contemplate that a person's occupational duties and/or occupation

> may change after the insurance policy is issued.
> Therefore, the insured's occupation is considered what
> his duties are at the onset of the insured's alleged
> disability.    That Plaintiff indicated in insurance
> applications what his occupation was at [the] time he
> applied for insurance coverage is of no consequence. . . .

*Id.* at *23-24.

Whether Plaintiff listed "dentist" on his policy applications in 1990, 1995 and 2002 is immaterial in determining the Occupation against which disability is judged.  His "Occupation" is determined not by what he listed on his application, but instead by whatever occupation he was engaged in at the time of disability in March, 2009.

It was undisputed that Plaintiff derived half of his pre-disability income from managerial and administrative duties, and spent one-third of his time performing them.  His pre-disability Occupation was not limited to duties related to practing dentistry.

### B.    Summary of the Argument Regarding Dismissal of Plaintiff's Fraud Claim

Plaintiff's fraud claim alleged that when he bought the Policies in 1990, 1995 and 2002, Defendants' "agents" told him they would provide total disability benefits if he became unable to practice dentistry (as opposed to his "Occupation," which the Policies define as whatever occupation he is engaged in at the time of disability).   Plaintiff alleged that such representation was fraudulent because

Defendants, after paying hundreds of thousands of dollars in benefits between 2009 and 2011, ultimately denied his total disability claim when they finally learned in June 2011 that his pre-disability Occupation included management and administrative duties, and was not limited to just practicing dentistry. The district court properly dismissed Plaintiff's fraud and misrepresentation claim under Fed. R. Civ. P. 12(b)(6).

First, the fraud claim was based solely upon Defendants' alleged breach of contractual duties arising under the Policies, which Plaintiff alleges only occurred when Defendants denied total disability benefits. The district court correctly applied Michigan law holding that a fraud claim cannot be maintained where it is based on an alleged breach of contractual duties.

Second, any representation about the circumstances under which the Policies would pay benefits would be a non-actionable statement of future conduct, not an actionable statement of past or existing fact.

Third, Plaintiff's complaint did not allege that Defendants made any representation regarding future conduct with a present intent not to perform. To the contrary, Defendants paid Plaintiff total disability benefits from 2009 through 2011. Benefits were terminated only after Defendants discovered that Plaintiff's pre-disability Occupation was not limited to just practicing dentistry, but that half

his income and one-third of his duties involved managing and administering his several practices.

Fourth, as a matter of law Plaintiff could not have reasonably relied on any agents' alleged statement that Plaintiff would be deemed "totally disabled" if he became unable to practice dentistry in the face of the Policies' express definition of "Occupation" (the occupation in which the insured is engaged at the time of disability, not "dentist" or any other title), and in the face of the Policies' statement that no agent can modify the terms of the Policies.

Dismissal of Plaintiff's fraud claim should be affirmed for any of those reasons.

Lastly, Defendants agree that the district court erred in holding that 12% penalty interest under M.C.L. 500.2006(4) is unavailable if a first-party claim is "reasonably in dispute." Defendants did not urge that result in the lower court, and the lower court inexplicably relied on patently out-dated Michigan law in *sua sponte* reaching that conclusion. However, that issue is moot if this Court reverses the district court's summary judgment opinion and holds that the Policies' "total disability" definition is unambiguous.

## C.    Argument

### 1.    Standard of Review

This Court reviews "de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Lukas v. McPeak*, 730 F.3d 635 (6th Cir. 2013).

A complaint must "contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory'." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The complaints' "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 127 S. Ct. at 1964. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Lastly, this Court "may affirm the district court's dismissal of Plaintiff's claims on any grounds, including those not relied on by the district court." *Zalusky v. United America Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

2.    **The District Court Properly Dismissed Plaintiff's Fraud Claim Under Fed. R. Civ. P. 12(b)(6)**

Plaintiff's claim for "fraud and misrepresentation" in Count II was based upon Plaintiff's allegation that "it was represented to him by [Defendants' agents] that the Policies covered his Occupation" as a dentist (Doc. #1, Complaint, ¶23, Page ID #5), which representation Plaintiff alleged was false because Defendants denied his claim for benefits.    (Doc. #1, Complaint, ¶25, Page ID #5) (representation was allegedly false based upon Defendants' position that under the policies "Leonor was no longer totally disabled because he can manage dental practices and real estate but not practice dentistry").

The district court dismissed Plaintiff's fraud claim because the alleged "fraud" arose solely from Defendants' contractual obligations under the Policies. The district court held:

> .  .  .  Plaintiff's fraud claim alleges that Defendants misrepresented that Plaintiff would receive benefits if he became unable to work as a dentist. Whether that alleged misrepresentation was stated as a present fact of the Policies' scope or as a future promise of coverage, Plaintiff's claim arises solely from Defendants' contractual obligation to pay Plaintiff benefits according to the Policies if he became disabled. The alleged fraudulent statement is indistinguishable from the Policy terms that Plaintiff argues were breached. Therefore, the fraud claim does not arise under a breach of a legal duty that is separate and distinct from the alleged breach of the Policies.

(Doc. #16, 3/20/13 Opinion and Order Granting Defendants' Motion to Dismiss Count II at 5-6, Page ID #192-93). *See also id.* at 7, Page ID #194.

Dismissal was proper both for the reasons the district court relied upon, as well as for the additional reasons set out below.

> ### a.     The District Court Correctly Held That Fraud and Misrepresentation Cannot Be Based On the Breach of Contractual Duties

This Court recognized in *Brock v. Consolidated Biomedical Labs*, 817 F.2d 24 (6th Cir. 1987), that the "law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." *Id.* at 25 (citing *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980); *Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1957); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 378 N.W.2d 558 (1985)).

*Brock* held that the plaintiff could not allege a tort claim based upon the same actions that constituted a breach of contract:

> If plaintiff's claim were allowed to proceed, it would confuse the characteristics of an action in tort with those of an action in contract and blur beyond recognition the boundary between actions in tort and contract. If every contract breach were treated as negligence or intentional tort, there would be no need for contract law.

*Id.* at 26.

The district court in this case correctly applied Michigan law, holding that a plaintiff cannot maintain a fraud claim where the alleged misrepresentations are the same as the obligations created by a contract between the parties. *See, Huron Tool and Eng. Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541 (1995) ("The fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants" and [t]hese representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached. Plaintiff fails to allege any wrongdoing by defendants independent of defendants' breach of contract and warranty."); *Casey v. Auto-Owners Ins. Co.*, 273 Mich. App. 388, 401, 729 N.W.2d 277 (2006) (a "plaintiff cannot maintain an action in tort for nonperformance of a contract," but instead "[t]here must be a separate and distinct duty imposed law"); *Merchants Publishing Co. v. Maruka Mach Corp of America*, 800 F. Supp. 1490, 1493 (W.D. Mich. 1992) ("Counts V [fraud and misrepresentation], VI [innocent and negligent misrepresentation], and VII [rescission of contract] of the First Amended Complaint are of a contractual nature. . . . These operative allegations in the claims would not arise without the existence of the putative contracts between the parties" and "[s]uch allegations therefore cannot be maintained as tort-based theories.").

In *Theuerkauf v. United Vaccines*, 821 F. Supp. 1238 (W.D Mich. 1993), the plaintiff sued a vaccine manufacturer for breach of contract, negligence, and fraud in connection with the loss of livestock after they were vaccinated. The parties "entered into an agreement by which plaintiff would purchase the vaccine from the defendant to use on plaintiff's breed stock mink." *Id.* at 1241. The "plaintiff did not get what he bargained for," and the vaccine failed to perform. The plaintiff sued for breach of contract, and negligence and fraud.

The court dismissed the plaintiff's tort theories, holding that the relationship was governed by a contract:

> Plaintiff's claims of negligence and fraud as found in the complaint are not tort claims which arise independent of the contract; therefore, defendant owed no duty to the plaintiff "separate and distinct" from the duty under the contract. . . .   Instead, the claims arise because the plaintiff contracted to purchase the vaccine and are intertwined with the product's performance. Plaintiff's negligence claim states that defendant failed to discover that the vaccine was dangerous and failed to warn the plaintiff. Similarly, plaintiff's fraud claim states that defendant misrepresented the product as safe. These claims arise only because the product did not work as it was supposed to work.

*Id.* at 1241.

In this case, the district court relied upon all of the above authority in dismissing Plaintiff's fraud claim (Doc. #16, 3/20/14 Opinion at 5, Page ID #192),

authority that Plaintiff completely fails to address on appeal, much less attempts to distinguish.

In addition, *Oliver v. National Life Ins. Co.*, 2010 U.S. Dist. LEXIS 92551 (E.D. Mich., Sept 7, 2010), held that the plaintiff insured's fraudulent misrepresentation count failed to state a claim under Michigan law because, like Plaintiff in the present action, the complaint alleged nothing other than that the insurer denied disability income benefits under the contract. *Oliver* held that a "plaintiff cannot maintain an action in tort for nonperformance of a contract" because "[t]here must be a separate and distinct duty imposed by law." *Id.* at *7 (quoting *Casey, supra*, 273 Mich. App. at 401.   A fraud action cannot be maintained if it is not "based on actions falling outside the policy of insurance." *Id.*

The district court correctly held that Plaintiff's fraud claim was inseparable from its claim that Defendants breached the Policies.

First, Plaintiff's Complaint makes clear that the alleged "misrepresentation" is founded directly upon Defendants' alleged breach of the Policies.  Paragraph 25 alleges that "[b]y claiming that Leonor was no longer totally disabled because he can manage dental practices and real estate but not practice dentistry, Provident Life and Pail [sic] Revere have misrepresented the terms, benefits, advantages and conditions of the Policies . . .."  (Doc. #1, Complaint, ¶25, Page ID #5).  That is

identical to his breach of contract claim, in which he alleges that "Provident and Paul Revere each breached the Policies in 2011 by terminating all Monthly Benefits" when they "ceased making any further disability payments" after concluding that "he was not disabled form his Occupation because he was able to manage his dental practices and real estate." (Doc. #1, Complaint, ¶¶15 and 20, Page ID #4-5).

Second, Plaintiff conceded in the lower court that he "filed this action for breach of contract *and fraud* to address the refusal of defendants . . . to honor their insurance obligations toward Plaintiff." (Doc. #14, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Count II at 2, Page ID #56) (emphasis added).

Third, Plaintiff's Brief on Appeal concedes that his "fraud and breach of contract claims are intertwined" because it is only "[i]n light of Appellant's failure to provide benefits under the policies" that "it has now become apparent that the representations about the coverage provided by the insurance policies was false." (Plaintiff's Brief on Appeal at 52 and 54).

The district court properly concluded that Plaintiff failed to state a fraud claim because he alleged no duty existing independently of the contracts.

     **b.**    **Any Representation About The Circumstances Under Which Benefits Would Be Paid Is a Non-Actionable Statement of Future Conduct, Not an Actionable Statement About a Past or Existing Fact**

Under Michigan law, "fraud requires a misrepresentation about the past or present," as opposed to "what a defendant 'would' do in the future." *Lawrence M. Clarke, Inc. v. Richco Construction, Inc.*, 489 Mich. 265, 284, 803 N.W.2d 151 (2011). The Michigan Supreme Court has cautioned that "courts should . . . carefully examine whether the insureds [asserting fraud] have established . . . the statements are statements of past or existing fact, rather than future promises. . . ." *Cooper v. Auto Club Ins. Co.,* 481 Mich. 399 416, 751 N.W.2d 443 (2008) Moreover, "courts must distinguish between misrepresentations of fact, i.e., false statements of past or existing facts, and mere negotiations of benefits, i.e., the mutual discussion and bargaining preceding an agreement to pay . . . benefits." *Id. See Haviland v. Metropolitan Life Ins. Co.*, 2012 U.S. Dist. LEXIS 88228 (E.D. Mich., June 26, 2012) ("an actionable misrepresentation must relate to past or existing facts, not future promises of performance") (citing *German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 2d 958, 965 (W.D. Mich. 2007)).

Plaintiff simply alleged that he was told that he would be entitled to benefits under the Policies if he were unable to practice dentistry. Plaintiff's Complaint

alleged no representation that related to any present or past fact, and therefore failed to state a claim for fraudulent misrepresentation. Any purported representation about the circumstances under which benefits would be paid would be a non-actionable representation regarding future conduct, not an actionable statement relating to an existing or past fact.

Michigan courts have expressly held that alleged misrepresentations about the meaning of a contract term cannot support a fraud claim as a matter of law.

In *Michaels v. Amway Corp.*, 206 Mich. App. 644, 522 N.W.2d 703 (1994), a distributorship contract had a reservation-of-rights clause that allowed the defendant to change the rules in its Business Reference Manual ("BRM") to which distributors must comply. The defendant changed certain BRM rules on a case-by-case basis and in a way applicable only to the plaintiff, rather than across the board for all distributors. The rule change prevented the plaintiff from transferring its distributorship, and it sued for, among other things, breach of contract and fraud. The plaintiff alleged that the defendant misrepresented the meaning of the reservation-of-rights clause in the contract. Affirming dismissal of the fraud claim, *Michaels* held:

> [P]laintiffs base their claim on defendants' *alleged misrepresentation of the meaning of the reservation of rights provision*. To constitute fraud, the misrepresentation in question must be predicated on a statement of past or existing fact. . . . A mere promise that is broken is neither fraud nor evidence of fraud . . ..

> The reservation-of-rights provision was not a statement regarding past or existing facts. Accordingly, the circuit did not err in dismissing plaintiffs' fraud claim.

*Id.* at 652 (citations omitted; emphasis added). *See also Cummins v. Robinson Township*, 283 Mich. App. 677, 697, 770 N.W.2d 421 (2009) (reversing trial court's failure to dismiss fraud claim, citing the rule that an "alleged misrepresentation of the meaning of a contract term could not constitute fraud because [it is] not predicated on a statement of past or existing fact").

Plaintiff's fraud claim simply alleged that Defendants' agents told him under what circumstances the Policies would provide benefits, which statements he alleged proved untrue when Defendants determined he was not "totally disabled." Any alleged misrepresentation about the meaning of a contract term is non-actionable as a matter of law.

### c.    Plaintiff's Complaint Did Not Allege Any Promise With A Present Intent Not to Perform

Plaintiff asserts on appeal that his fraud claim should survive because fraud can be based upon a promise that is made with a present undisclosed intent not to perform. (Plaintiff's Brief at 52). That assertion is meritless.

First, Plaintiff fails to acknowledge that his complaint never alleged that Defendants made any promise with an undisclosed present intent not to perform it. Indeed, Plaintiff's Brief on Appeal fails to cite *any* part of its complaint. Count II

(as well as the balance of the complaint) was devoid of any allegation that Defendants made any representation with a present intent not to perform.

Plaintiff relies solely upon the unpublished, and easily distinguishable, *Craft Agency, Inc. v. Rickard*, 2005 Mich. App. LEXIS 2131 (Mich. App., Aug. 30, 2005) (Plaintiff's Brief at 53), which held that a party sufficiently pled a fraud claim where it alleged that the other party "had no intention of retaining the services [of] the party after [a client] executed its insurance contracts and, further, had no intention of paying commissions to [the party] which would become due upon payment of premiums." *Id*. at *12-13. *Rickard* simply held that the party asserting fraud sufficiently pleaded a claim because it "alleged that [the other party] made a promise with a present intention not to perform in the future." *Id*. at *15. In stark contrast, Plaintiff's complaint made no such allegation.

Second, even if Plaintiff *had* generally alleged a present intent to not pay future disability benefits, such allegation is insufficient to state a fraud claim under *Twombly's* federal pleading standards. *See Oliver v. National Life Ins. Co.*, *supra*, (dismissing fraud claim because "Plaintiff provides nothing other than his conclusory allegations regarding Defendant's intent [to not pay benefits], which do not raise his fraud claim to the 'plausible' level [required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 546, 577 (2007)"). (quoting *New Start, Inc. v. Bristol West Insur. Co*., 2007 W.L. 1207099 at *2 (Mich. App., April 24, 2007) (although "an

action for fraud can be based on an unfulfilled promise to perform in the future if the promise was made with a present undisclosed intent not to perform, . . . the mere fact that defendant ultimately failed to pay the expenses does not support an inference that it deliberately misrepresented its intent").

Although a bald allegation may have been sufficient in the Michigan Court of Appeals' unpublished *Craft Agency* case, it would not be sufficient under *Twombly's* federal pleading standard. Plaintiff could not possibly have plausibly alleged that Defendants did not intend to pay benefits when Plaintiff bought the Policies in 1990, 1995 and 2002 in light of the undisputed fact that Defendants *paid his claim* when he filed it in 2009, and did not finally terminate benefits until they learned two years later in 2011 that his "Occupation" involved much more than just practicing dentistry.

> **d.    Plaintiff    Could    Not    Have Reasonably Relied On Any Agent's Representation About the Scope of the Policies**

Again, Plaintiff's fraud claim is based on his allegation that when he "purchased each of his three (3) Policies, it was represented to him by Provident's and Paul Revere's *agents* that the Policies covered his Occupation (i.e., a dentist)." (Doc. #1 Complaint, ¶23, Page ID #5) (emphasis added). Assuming *arguendo* that agents specifically told him that "Occupation" (an expressly defined term in the

Policies) meant only "dentist," Plaintiff could not establish reasonable reliance as a matter of law.

First, any statement that Plaintiff would be entitled to benefits if he became unable to practice dentistry would be contrary to the Policies express definition of "Occupation," which is not limited to dentistry. The Policies *nowhere* define Plaintiff's "Occupation" as "practicing dentist," or even use the word "dentist." The 8090 Policy defines "Your Occupation" as "the occupation or occupations in which You are regularly engaged at the time Disability begins," the 0113 Policy as "the occupation in which You are regularly engaged at the time You became Disabled," and the 2074 Policy as 'the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which You are regularly engaged at the time You become Disabled."

The unambiguous and express definitions of "Occupation" in the Policies make no reference to "dentistry," and Plaintiff therefore could not plausibly allege reasonable reliance on the alleged misrepresentation. *See Cooper, supra*, 481 Mich. at 415 ("when the insurer has made a statement that clearly conflicts with the terms of the insurance policy, an insured cannot argue that he or she reasonably relied on that statement.") Plaintiff's fraud claim alleges that he was told that the

policies said something that they clearly did not, and therefore could not allege reasonable reliance as a matter of law.

Second, all three Policies told Plaintiff that they were integrated and that "[n]o agent may change this Policy or waive any of its provisions." (Doc. #15-2, the 8090 Policy, ¶10.1, Page ID #113; Doc. #15-3, the 0113 Policy, ¶10.1, Page ID #144; Doc. #15-4, the 2074 Policy, Page ID #174). The applications for Policies 8090 and 0113 said "[n]o agent or broker has authority . . . to make or alter any contract or policy" (Doc. #15-2, Page ID #119; Doc. #15-3, Page ID #154), and the 2074 Policy application said "[n]o broker has authority to waive any of the Company's rights or requirements or to make or alter any contract or policy." (Doc. #15-4, Page ID #185).

The district court properly dismissed Plaintiff's fraud claim, and its decision can be affirmed on any, or all, of the preceding grounds.

Plaintiff argues that if this Court reverses the district court's summary judgment decision and holds that the Policies are unambiguous, it should reinstate his fraud claim because, according to Plaintiff, he was fraudulently induced to purchase the Policies. That conclusion simply does not follow. Moreover, Plaintiff ignores, and certainly does not challenge, the district court's conclusion that the remedy for such a fraud claim would be voiding the Policies, not payment of benefits under them. The district court noted:

> [T]o remedy Defendants' alleged fraud, Plaintiff seeks an order requiring Defendants to pay Plaintiff lifetime disability benefits in accordance with the Policies. However, a successful fraud claim does not provide such a remedy, but instead "renders [a] contract voidable at the option of the defrauded party." *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 733 N.W.2d 102, 105 (Mich. Ct. App. (2006) (citation omitted).

(Doc. #16, 3/20/13 Opinion at 4 n. 1, Page ID #191).

Reversing the district court's summary judgment opinion would not resurrect the fraud claim, and even if it did, the only remedy would be rescission of the Policies.

### 3. Defendants Agree That the District Court Erred in Holding that 12% Penalty Interest is Unavailable

The district court held that "Plaintiff's insurance claim was 'reasonably in dispute' and Plaintiff is not entitled to penalty interest" under M.C.L. 500.2006(4). (Doc. #48, 4/30/14 Opinion, Page ID #1425). Defendants *did not* assert that position in the lower court, and to the contrary specifically said in their motion to dismiss Plaintiff's Unfair Trade Practices Act ("UTPA") claim "that no separate claim for violation of the UTPA can be maintained, *other than a claim for statutory interest*," and that "any claim for violation of the UTPA (*other than penalty interest*) should be dismissed for failure to state a claim." (Doc. #9, Defendants' Motion to Dismiss, Page ID #41-42) (emphasis added). Defendants agree that the district court erred when it *sua sponte* held that 12% penalty interest

under M.C.L. 500.2006(4) is unavailable to a first-party insured if the claim for benefits was "reasonably in dispute."

*Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 741 N.W.2d 549 (2007), expressly held that "a first-party insured is entitled to 12 percent penalty interest if a claim is not timely paid, irrespective of whether the claim is reasonably in dispute" under M.C.L. 500.2006(4). *See also Stryker Corp. v. XL Ins. America*, 735 F.3d 349, 360 (6th Cir. 2012)("first party insurance claimants need not demonstrate that the claim was not 'reasonably in dispute' in order to recover the 12% interest" under M.C.L. 500.2006(4)) (citing *Griswold*).

The district court erroneously relied on out-dated, pre-*Griswold* case law in *sua sponte* reaching its conclusion that 12% penalty interest is unavailable if a first-party insurance claim is "reasonably in dispute" (Doc. #48, 4/30/14 Opinion at 30-31, Page ID #1424-25), a conclusion that is inexplicable and which Defendant cannot defend on appeal.  However, the district court's error is inconsequential because, as set out further below, the district court's summary judgment decision must be reversed, rendering penalty interest irrelevant.

## II.    DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE

### A.    Plaintiff's "Waiver" Argument is Meritless

Plaintiff urges this Court to ignore the grammatical structure of the Policies' "total disability" definition and ignore that its grammar permits one, and only one,

construction, which is that to be "totally disabled" an insured must be unable to perform *all* of the important duties of his occupation, not just "one" or "some" of them as the district court erroneously held.    To do so, Plaintiff claims that Defendants should be deemed to have forfeited an argument which (1) Plaintiff *acknowledged* the Defendants presented to the district court on summary judgment, (2) Plaintiff had complete opportunity to respond to, *and did respond to*, in the district court, (3) Plaintiff argued below that the district court *considered and decided* in its summary judgment opinion, (4) the district court *acknowledged* that it considered and decided in its summary judgment opinion, and (5) Plaintiff has *fully briefed on appeal*.    Plaintiff's waiver argument is without merit.

> **1.    There Can Be No Forfeiture Where The District Court Acknowledged That Defendants Presented, and the District Court Considered and Ruled Upon, Defendants' Grammar Argument in Its Summary Judgment Opinion**

The district court denied Defendants' motion for reconsideration of the court's summary judgment opinion not because the "grammar argument" was forfeited by being raised in a reply brief in support of summary judgment, but because Defendants had already presented the argument during briefing on cross-motions for summary judgment and the district court had already considered and ruled on the argument in its April 30, 2014 Opinion.    The district court said:

By raising their grammar argument for the first time in their reply, Defendants forfeited this argument. . . . ***Regardless***, Defendants' motion for reconsideration lacks merit because ***the court already addressed their grammar argument***. The local rule is clear: "[t]he court will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3) . . .

Defendants' argument is exactly the type of argument that the local rule was designed to prohibit. Defendants openly admit that they have already presented their argument -- their motion for reconsideration is premised on this fact. Further, ***in its thirty-two page [4/30/14] opinion, the court considered – if not expressly then at least by reasonable implication – Defendants' grammar argument***.

(Doc. #55, 8/1/14 Opinion Denying Motion For Reconsideration at 4-5, Page ID #1505-06) (citations omitted; emphasis added).

This Court held in *United States v. Clariot*, 655 F.3d 550 (6th Cir. 2011), that "there can be no forfeiture 'where the district court nevertheless addressed the merits of the issue'" even if it is raised for the first time on appeal.[2] *Id*. at 556 (quoting *Blackmon-Mallory v. U.S. Capitol Police Bd*., 575 F.3d 699, 707 (D.C. Cir. 2009)).

---

[2] Of course, Defendants' "grammar argument" is not being raised for the first time on appeal. It was presented to the district court (albeit in a summary judgment reply brief and again in a motion for reconsideration), Plaintiff was given full opportunity to respond to it, and the district court ruled on it.

In *Clariot*, the appellee argued that the appellant did not assert an issue in the district court and therefore forfeited it on appeal, even though the district court considered and ruled on the issue. This Court rejected that argument, holding that "[n]o one disagrees that the district court addressed the issue," and "[w]hen a district court resolves an issue, the losing party can challenge it" on appeal. *Id*. at 556. *See also Blackmon-Mallory*, 575 F.3d at 707-08 (rejecting appellee's "position that appellant forfeited [an] argument . . . by failing to raise the argument in the district court" because the forfeiture rule "does not apply where the district court nevertheless addressed the merits of the issue"); *Roman-Oliveras v. Puerto Rico Elec. Power Auth*., 655 F.3d 43, 49 n.10 (1st Cir. 2011) (argument not forfeited on appeal where "the district court addressed it on the merits, as did appellees in their appellate briefing").

The primary case upon which Plaintiff relies, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) (Plaintiff's Brief at 29-30), directly supports Defendants' position. In *Scottsdale*, the appellant "failed to properly raise [an] issue . . . with the district court" because the appellant "first raised [the] issue in her 'Reply to [the appellee's] Response to [the appellant's] Motion to Alter, Amend or Reconsider Declaratory Judgment'." *Id*. at 553. But *Scottsdale* nonetheless considered the merits of the issue on appeal because the district court considered the issue:

> . . . [W]e find that the issue . . . has not been properly presented for appeal. However, . . . because the district court did consider the issue in this case, we address the merits of [the appellant's] argument on this issue. . . .

*Id.* at 553-54.

Applying *Scottsdale*, this Court very recently held in *Greco v. Livingston County*, - F.3d - , 2014 U.S. App. LEXIS 24109 (6th Cir., Dec. 19, 2014), that the "forfeiture rule . . . tells us to correct errors raised and addressed below, not to entertain new claims raised for the first time on appeal." *Id.* at *6.

Defendants' "grammar argument" was undeniably "raised and addressed below," and it was not a "new claim[ ] raised for the first time on appeal." It therefore cannot be deemed forfeited. Although the district court stated the general principal that an argument first raised in a reply brief may be deemed forfeited, it nonetheless went on to acknowledge that "the court already addressed" the argument in its summary judgment opinion, and denied Defendants' motion for reconsideration by affirmatively stating that "in its thirty-two page [summary judgment] opinion, the court considered – if not expressly then at least by reasonable implication – Defendants' grammar argument." (Doc. #55, 8/1/14 Opinion at 5, Page ID #1506). Because the district court acknowledged that it considered and addressed the "grammar argument" in its summary judgment opinion, Defendants cannot be deemed to have forfeited it on appeal.

-33-

2.  **The grammatical structure was not a new *issue*; it was merely an additional *argument* why the Policies are not ambiguous**

The issue the district court considered, and the issue this Court must ultimately resolve on appeal, is whether the Policies' definition of "total disability" is unambiguous under the applicable rules of construction.  The grammar of the clause is merely an additional *reason* for finding it unambiguous; it was not a new *issue* or *claim* that was asserted for the first time in a reply brief.  There is a difference between raising a new issue or claim, even for the first time on appeal, and presenting an additional reason or argument in support of an issue.  The latter is not barred even on appeal, and even when a party does not present the argument in the lower court.

This Court made clear in *Gallenstein v. United States*, 975 F.2d 286 (6th Cir. 1992), that an appellant can assert on appeal new, or additional, arguments in support of an issue that was raised in the district court.[3]  In *Gallenstein*, the appellant United States argued in the district court that a statutory amendment changed the effective date of a tax rule, impliedly repealing an earlier statute.  In appealing summary judgment against it, the government argued that the statute was also expressly repealed.  *Gallenstein* held:

---

[3] It follows *a fortiori* that an additional argument can be asserted in support of an issue that is presented in a summary judgment motion without it being deemed forfeited.

The taxpayer argues the government failed to raise the express repeal argument in the district court, stating that the government's motion for summary judgment was heard exclusively on an implied repeal theory. Taxpayer therefore argues that this failure to object precludes appellate review of the express repeal theory. . . .

This argument mistakes the failure to raise a *claim* below with the failure to make an *argument* in support of that claim. The government undoubtedly raised a claim that the 1981 amendments . . . changed the effective date for the [rule] . . . . Whether this change was effected by an express or an implied repeal are simply alternative *arguments* in support of a single claim.

*Id.* at 290, n.4 (emphasis in original; citations omitted). Thus, this Court held that "[h]aving raised a claim of congressional repeal" in the district court, on appeal "the government can make any argument it wishes in support of that claim." *Id.* *See also Information Systems and Networks Corp. v. City of Detroit*, 281 F.3d 1220, 1227 n.7 (11th Cir. 2002) (rejecting appellee's assertion that "we should not consider [an] argument since [appellant] raises it for the first time on appeal," and holding that "[w]hen a party presents something on appeal that is 'part and parcel of its original argument,' then we will consider it on appeal").

Defendants claimed in the lower court that the "total disability" definition is unambiguous and can only be met if the insured is unable to perform all of the important duties of his occupation. Indeed, that was *the* issue on summary judgment. Analyzing the grammar of the definition was merely an additional argument in support of that claim. If such an argument could be properly raised on

appeal for the first time, it could certainly be made in a reply brief in the district court in support of the issue that was the subject of summary judgment.

Other courts have recognized the distinction between raising new *issues* on appeal (which is generally prohibited) and raising new *arguments* (which is permitted).

In *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505 (8th Cir. 2012), the appellee "argue[d] that [a]ppellants forfeited their argument that the state court's dismissal was not a final judgment on the merits by failing to present it to the federal district court." *Id.* at 508. *Hintz* rejected that position because "[t]here is a difference between a new argument and a new issue," and "[a]lthough the arguments before the district court did not focus on whether the state court's order constituted a ruling on the merits, [a]ppellants' contention that the order was not on the merits raises only a new argument, not a new issue, and thus is not barred from review." *Id.*

*In Re Osweiler*, 346 F.2d 617 (C.C.P.A. 1965), held that although a court of appeals generally should not review new issues not raised in the lower court, "a blanket statement condemning new arguments is far too broad." *Id.* at 621. Instead, the "real question should be whether the new argument is such as to raise a new issue," because it "would be in disharmony with one of the primary purposes of appellate review were we to refuse to consider each nuance or shift in approach

urged by a party simply because it was not similarly urged below." *Id. See also Universal Title Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir. 1991) (same).

The issue presented below in Defendants' motion for summary judgment was whether the "total disability" definition was unambiguous. That is also the issue this Court must decide on appeal. Examining its grammatical structure is one of several principles of construction that Michigan law requires to be applied, and was merely an additional argument in support of the issue.

> **3. Even if the "grammar argument" were deemed a new issue that was not properly presented in the district court, it is properly considered on appeal**

Even in cases involving an appellant's abject failure to raise an issue in the district court, this Court has held it proper to consider the issue for the first time on appeal if it is, as in this case, a pure question of law, and the parties briefed the issue. *Lexicon, Inc. v. Sefeco Ins. Co. of America, Inc.*, 436 F.3d 662 (6th Cir. 2006) ("[w]e fail to see how an issue of preservation or waiver is raised in this case" because "the district court fully addressed [the appellant's argument]" and "both parties fully briefed the issue before this court"); *Strombeck v. New Line Cinema*, 384 F.3d 283, 304 n.8 (6th Cir. 2004) ("[w]hile we will generally decline to consider on appeal issues not considered by the district court, we do recognize an exception where the issue presents only a question of law"); *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002) (rejecting appellee's forfeiture

argument where "the issue is one of law" and appellee "argued the substance of the
. . . issue both in the district court and again on appeal"); *Lincoln Elec. Co. v
St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 685 (6th Cir. 2000) (rejecting
appellee's assertion that "arguments have been forfeited because they were not
argued to the district court prior to judgment" where "the parties were sufficiently
thorough in proffering to the district court their concerns, differences of opinion,
[and] preferred sources of precedent"); *United Food & Commercial Workers
Union v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 361 n.9 (6th Cir.
1998) ("[a]lthough we will generally decline to consider in the first instance issues
not considered by the district court, . . . [b]ecause the parties raised the . . .
argument in substance and the issue involves purely legal questions, we shall
consider the issue on appeal").

In *Wayne County Neighborhood Legal Serv. v. National Union Fire Ins. Co.*,
971 F.2d 1 (6th Cir. 1992), the appellant argued that the district court "erroneously
interpreted [a liability insurance] policy to require, as a condition of coverage, a
determination that a director or officer of [the appellant] was liable to the plaintiff
in the underlying litigation." *Id.* at 3. The appellee asserted that the appellant "did
not make this argument before so as to preserve it for appellate review." *Id.* This
Court held that in the district court, "at a very minimum [the appellant's] counsel
pointed out the provisions of the insurance contract on which it now bases its

argument," and "[t]herefore, we find no merit to the [appellee's] claim that this argument was waived." *Id.*

This Court explained in *Wayne County*:

> Even if the [appellant] had not raised the issue before, it is proper for an appellate court to exercise its discretion to resolve issues for the first time on appeal when as here the issue presented is purely one of law and does not depend on the factual record below. ... It is relevant here that [appellee] cannot claim surprise. [Appellant's] argument is based exclusively on the language of the contract for insurance. The meaning of that language was clearly in dispute below; therefore, we find that this is not a case involving waiver.

*Id.* at 3 n.2.

In exactly the same way, proper interpretation of the "total disability" definition is purely a question of law, and Michigan law requires, among things, that the Policies be construed according to basic principles of grammar. Plaintiff cannot claim surprise because the argument was raised, and he responded to it, in the district court, and it is based solely on the Policies' language.

### 4. Plaintiff Was Given Full Opportunity to Address, and Did Address, the Grammar Argument in the District Court

This Court explained in *Shelby County Health Care Co. v. The Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355 (6th Cir. 2009), that the reason for deeming an issue forfeited is because the opposing party would be unfairly deprived of the ability to respond to it. *Shelby County* held that "[t]he

rationale underlying" the forfeiture rule "relates to the other party's opportunity to respond," and because the appellant "presented [an issue] to the district court in a context in which the [appellee] could have responded, [the appellant] did not waive its argument" on appeal. 581 F.3d at 372. *See also United States v. Jenkins*, 871 F.3d 598, 602 (6th Cir. 1989) (the reason "it is impermissible to mention an issue for the first time in a reply brief [is] because the appellee then has no opportunity to respond"); *Scottsdale Ins. Co.*, *supra*, 513 F.3d at 553-54 (forfeiture would apply because "Scottsdale was not afforded a response to [the] reply" brief asserting an issue, which "unfairly prevented Scottsdale from presenting a counter-argument to the [district] court").

In the present case, that concern is undeniably absent because Plaintiff had a full and complete opportunity to respond to Defendants' argument when the district court directed Plaintiff to file a response to Defendant's motion for reconsideration, and Plaintiff *did* respond.

### 5.    The Authority Plaintiff Relies Upon Is Mis-Cited and Inapposite

In support of its argument, Plaintiff's Brief on Appeal cites "*Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 676 (6th Cir. 2006) (concluding that an issue cannot be raised for the first time in a reply brief because the opposing party does not have an opportunity to respond)." (Plaintiff's Brief at 30). Although likely inadvertent, Plaintiff cites the ***dissenting*** opinion in *Lexicon*. 436 F.3d at

676. The *majority* in *Lexicon* held that "[w]e fail to see how an issue of preservation or waiver is raised in this case" because "the district court fully addressed" the appellant's argument, and because "both parties fully briefed the issue before this court" on appeal. 436 F.3d at 670, n.6.

Moreover, even the dissent in *Lexicon* noted that the forfeiture rule applies where "the appellee . . . has no opportunity to respond" to an argument in a reply. 436 F.3d at 676. In this case, Plaintiff had a full opportunity to respond, and did respond, to the argument in the district court.

Plaintiff's reliance on *Thurman v. Yellow Freight Systems, Inc.*, 97 F.3d 833 (6th Cir. 1996) (Plaintiff's Brief at 29), is misplaced because in that case "Thurman waived the issue [he sought to raise in the court of appeals] by not presenting it squarely before the trial court," because "[h]e did not litigate it at trial, and the district court did not address it," and because he "raised the issue for the first time in his motion to alter amend the judgment." *Id.* at 835.

In stark contrast, in this case Defendants squarely presented the "grammar argument" to the district court, Plaintiff was given full opportunity to respond to it, and the district court acknowledged that it addressed it.

### 6. Plaintiff Is Estopped from Claiming On Appeal That Defendants Forfeited the "Grammar Argument"

In response to Defendants' motion for reconsideration, Plaintiff affirmatively argued in the district court that Defendants presented the "grammar argument" in their summary judgment briefing, and that the district court considered and ruled on it in the court's April 30, 2014 Opinion. Plaintiff cannot now assert on appeal the opposite – that Defendants *failed* to present that argument, or that the district court did not consider and rule on it.

Plaintiff's Response to Defendants' Motion for Reconsideration (Doc. #54, Page ID #1484-1500) argued that Defendants' motion should be denied because Defendants presented, and the district court considered and rejected, the "grammar argument" in the underlying summary judgment motion, notwithstanding that argument was articulated in a reply brief. *See* Doc. #54, Plaintiff's Response to Defendants' Motion for Reconsideration, Page ID #1488 (asserting that reconsideration motion was Defendants' attempt "to re-litigate the same issue ruled upon by [the district court's April 30, 2014 Opinion] either expressly or by reasonable implication"); Page ID #1489 ("Defendants already made – and the Court thus considered – this precise argument [regarding the Policies' grammar] during summary judgment briefing"); Page ID #1494 ("Defendants are merely repeating an argument already made and necessarily rejected by" the district court

because "Defendants previously presented its grammar argument during summary judgment and relied upon much of the same authority, especially in their Summary Judgment Reply"); Page ID #1494 ("because Defendants made the same grammar argument in their summary judgment briefs, . . . the Court should deny Defendants' motion for reconsideration").

The district court agreed and denied Defendants' motion for reconsideration on the ground that Defendants presented, and the district court considered and rejected, the grammar argument in its April 30, 2014 summary judgment opinion. (Doc. #55, 8/1/14 Opinion at 4-5, Page ID #1505-06).

Plaintiff cannot argue on appeal the opposite position – i.e., that Defendants did *not* properly present the argument, or that the district court did not consider or rule on it in its April 30, 2014 Opinion. *Gregory v. Missouri Pac. Railroad Co.*, 32 F.3d 160, 164-65 (5th Cir. 1994) (although "[a]n appellee generally may urge in support of a judgment any matter appearing in the record, . . . [it] cannot take one position before the district court and then take an inconsistent position" in the court of appeals).

There is no basis for Plaintiff's claim that the "grammar argument" should be deemed forfeited on appeal, or that this Court should refuse to apply one of the basic tools of contract construction required under Michigan law to determine whether the Policies are unambiguous.

## B.    The Lower Court Erred in Finding the "Total Disability" Definition Ambiguous

The district court held that the "total disability" definition was ambiguous because the inability to perform "the important duties" of Plaintiff's Occupation could reasonably mean either the inability to perform "all of the duties" or the inability to perform "one or more" or "some" of them.  The definition cannot be reasonably construed as the district court held because that alternative construction fails to give effect to the definite article "the," fails to acknowledge that the definite article preceding the plural noun "important duties" grammatically means "all of" those duties collectively and as a whole, treats the definition as though it used an indefinite article (inability to perform "an independent duty") or no article (inability to perform "important duties"), erroneously adds the words "some" or "one or more" to the definition, and treats the "total disability" definition as being identical to the "residual disability" definition.

### 1.    The Definite Article "The" Before "Important Duties" Grammatically Means *All* The Important Duties

Plaintiff concedes, as he must, that under Michigan law when interpreting legal text, "language must be read and understood in its grammatical context . . . ." *Herman v. Berrien Co.*, 481 Mich. 352, 366, 750 N.W.2d 570 (2008).  Plaintiff does not even attempt to dispute that as a matter of simple grammar, when the definite article "the" is placed before a plural noun, the phrase unambiguously

refers to *all* of the things referenced by the plural noun, collectively and as a whole. Grammatically, "the important duties" is the equivalent of "all of the important duties." *See* Defendants' First Brief at 19-30.

That basic rule of grammar has been repeatedly applied by the courts that have unanimously held that "the" preceding a plural noun means *all* of the things referenced by the noun, not "one or more" or "some." Thus, even when the issue is one of federal subject-matter jurisdiction, courts have held that use of the definite article "the" in the phrase "the primary defendants" under 28 U.S.C. §1332(d)(5)(A) and (d)(4)(B) grammatically and unambiguously means "*all* of the primary defendants," just as the phrase "the claims asserted by the proposed plaintiff class" in §1332(d)(4)(A)(i)(II)(bb) grammatically and unambiguously means "*all* of the claims." *See, e.g., Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155 (3rd Cir. 2009) ("language [was] clear and unambiguous" because "the definite article preceding the term 'claims' indicates that 'the claims asserted' means *all* the claims asserted") (emphasis in original). As set out in Defendants' First Brief at 23-27, the First, Third, and Fifth Circuits (and numerous district courts within those and other circuits, including the Sixth Circuit) have reached that conclusion based upon the grammatical meaning of the definite article preceding a plural noun, and no court has held to the contrary.

On November 10, 2014, the Tenth Circuit joined the others in holding that the phrase "the primary defendants" in §1332(d)(5)(A) unambiguously means *all* primary defendants.  Applying the rule that if "language is plain, the sole function of the courts is to enforce it according to its terms," and that courts are bound by "clear and unambiguous language," *Woods v. Standard Ins. Co.*, - F.3d - ; 2014 U.S. App. LEXIS 21383 (10th Cir., Nov. 10, 2014) (published), held that "[b]ased on the plain language of the state action exception [in §1332(d)(5)(A)], we conclude it requires all primary defendants to be state entities." *Id*. at *12.

Applying the same grammatical principle of construction upon which Defendants rely in this matter, the Tenth Circuit in *Woods* explained that "[t]he use of the definite article, 'the,' before the plural noun, 'primary defendants'," left "no doubt Congress intended the state action provision to preclude CAFA jurisdiction only when *all* of the primary defendants are states, state officials, or state entities." *Id*. at 13 (emphasis added).  *Woods* held that "[i]f Congress had intended otherwise, it could have expressly stated that federal CAFA jurisdiction shall not apply to any class action in which 'a primary defendant is' a state, state official, or state entity." *Id*.

In exactly the same way, the use of the definite article "the" before the plural noun "important duties" in the definition of total disability leaves no doubt that an insured is totally disabled only when he is unable to perform *all* of the important

duties of his occupation, not just one or some. Were the latter intended, the definition would have said "unable to perform *an* important duty."

In addition to all of the authority cited in Defendants' First Brief, numerous other courts have unanimously held that the phrase "the primary defendants" in §1332(d)(4)(B) means "all" of the primary defendants. *See Adams v. Macon County Greyhound Park, Inc.*, 829 F.Supp.2d 1127, 1138 (M.D. Ala. 2011) ("[t]he consensus among the courts is that the plural use of 'defendants' means that all primary defendants must be citizens of the state in which the action was originally filed," noting absence of "any contrary authority"); *Raspberry v. Capital County Mut. Fire Ins. Co.*, 609 F.Supp.2d 594, 606 (E.D. Tex. 2009) (phrase "the primary defendants" means "*all* primary defendants") (emphasis in original); *Moua v. Jani-King of Minn., Inc.,* 613 F.Supp.2d 1103, 1108 n.3 (D. Minn. 2009) ("use of the language 'the primary defendants' in §1332(d)(4) rather than 'a primary defendant' clearly demonstrates that *all* of the primary defendants must be residents of the state in which the action was originally filed") (emphasis in original); *Green v. Super Shuttle Int., Inc.*, 2010 U.S. Dist. LEXIS 7456 (D. Minn., Jan. 29, 2010) at *12 ("the use of the language 'the primary defendants' in §1332(d)(4)(B) rather than 'a primary defendant' clearly demonstrates that *all* of the primary defendants must be residents of the state in which the action was originally filed") (emphasis in original).

Plaintiff attempts to distinguish the grammatical rule applied in these cases by asserting that "the group of 'important duties' is ambiguous because it is subjective and not independently verifiable," unlike the items referenced by the plural nouns in those numerous cases.[4] (Plaintiff's Brief at 35). But that assertion merely confuses the potential difficulty of identifying the "important duties" of a given occupation with the real issue in this appeal, which is whether the "total disability" definition unambiguously means that an insured to be unable to perform all of the Occupation's important duties to be "totally disabled." Possible disagreement about what may *constitute* the important duties of a given occupation says nothing about whether the definition of "total disability" unambiguously means the inability to perform all of the important duties, as opposed to just one or some of them. Simply because it may be difficult to identify the important duties of an Occupation does not make the definition ambiguous. As this case illustrates, it took approximately two years of investigating Plaintiff's pre-disability Occupation (including engaging a forensic accountant, interviewing Plaintiff and reviewing his business records) before Defendants learned that Plaintiff spent one-third of his time and earned half of his income from management and

---

[4] *None* of the cases cited in Defendants' First Brief say anything about "subjectivity" or "independent verifiability" as the reason they concluded that "the primary defendants," "the claims," "the Indians," or "the residents" grammatically and unambiguously meant *all* of those things. Their holdings derive solely from the grammatical structure of the phrases that, like the Policies in this case, use the definite article "the" before a plural noun.

administrative duties, and that his important duties were not limited to just practicing dentistry.

Second, the important duties of an insured's occupation, including Plaintiff's Occupation in this case, *are* capable of verification. That is the whole point of claim investigation. In this case, the district court found it undisputed that in addition to practicing dentistry, Plaintiff's occupational duties before the March 2009 surgery included spending one-third of his time on management and administration from which he earned half of his income. Those non-dentistry duties were identified and independently verified during Defendants' investigation.

The very authority Plaintiff cites - - *Stoneman v. Paul Revere Life Ins. Co.*, 2013 U.S. Dist. LEXIS 178604 (E.D. Mich., Dec. 20, 2013), - - held that the "important duties" of an occupation are capable of objective measurement based on the income generated by those duties:

> Given that Stoneman purchased the Policy . . . for the very purpose of insuring his income, it seems particularly relevant to examine how his income was actually generated. . . . This examination informs the important duties determination, and, unlike other methods of deciding what the important duties of Stoneman's occupation were, this examination is capable of objective measurement.

*Id*. at *32 (citing *Arrigo's Fleet Serv., Inc. v. Aetna Life & Cas. Co.*, 54 Mich. App. 482, 486, 221 N.W.2d 206, 209 (1974)). As a matter of law, duties that generate

*half* of Plaintiff's pre-disability income are "important duties," especially given that half his income was generated based upon one-third of his time.

Third, Plaintiff's argument incorrectly assumes that under Defendants' construction of the "total disability" definition it would be necessary to know exhaustively each and every important duty of an insured's Occupation to determine if the insured meets the definition. That is, of course, simply untrue. The question is whether there are one or more important duties that the insured remains able to perform after incurring a disability. If so, he would be deemed "residually disabled" (provided he incurred loss of income), and if not he would be "totally disabled." That in no way requires knowing each and every possible "important duty" of an insured's Occupation.

Plaintiff tersely string cites three cases (*Minority Employees*, *Federal Gasohol*, and *Maryland Bank*) in asserting that "several other courts have concluded that the use of the definite article 'the' creates ambiguity when it is referring to a group that is not objectively verifiable." (Plaintiff's Brief at 36).

Not one of those cases talk about a definite article referring to a group that "is not objectively verifiable." Whatever point Plaintiff is trying to make, those cases do not support it.

Moreover, none of those cases have the slightest bearing on the question of whether the definite article "the" preceding a plural noun grammatically and unambiguously means *all* of things referenced by the noun.

*Minority Employees of the Tenn. Dep't of Employment Security, Inc. v. Tenn. Dep't of Employment Security*, 901 F.2d 1327 (6th Cir. 1990) (*en banc*), is inapposite and, if anything, further supports Defendants' position. It deserves more attention than Plaintiff's terse parenthetical gives it. (Plaintiff's Brief at 36).

Understanding *Minority Employees* requires knowing some of its background. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), held that under Fed. R. App. P. 3, "a notice of appeal using the phrase '*et al.*' failed to designate an appealing party and, therefore, did not confer jurisdiction over the party whose name was not expressly included in the notice." *Minority Employees*, 901 F.2d at 1329. Thus, a notice of appeal designating "Defendants ABC, Inc. *et al.*" would confer appellate jurisdiction over only ABC, Inc., and no other defendants.

After *Torres*, in *Ford v. Nicks*, 866 F.2d 865 (6th Cir. 1989), a "notice of appeal was captioned, in relevant part, 'Chancellor Ray S. Nicks, *et al.* Defendants'." *Minority Employees*, 901 F.2d at 1332. *Ford* distinguished *Torres* on the ground "that the use of the definite article in 'the defendants' in the body of the notice of appeal sufficiently designated" *all* of the defendants. 901 F.2d at

1332. *Ford* reasoned that "*et al.*" by itself (as in *Torres*) could mean either "and others" or "and *the* others," but that saying "the defendants" in the body of the notice "shows that '*et al.*' was intended to refer to all the others." *Ford*, 866 F.2d at 870.

In *Minority Employees*, this Court *en banc* held that "*Ford* . . . is inconsistent with *Torres*" because a "court may not look to the intent of the parties to cure ambiguities inherent in the use of the phrase '*et al.*'" 901 F.2d at 1333. Instead, *Minority Employees* held that "explicit language of *Torres* supports a reading that naming [each appellant] is required to effectively appeal." *Id*. at 1334.

In short, *Minority Employees* did not say, as Plaintiff erroneously asserts, that "the use of the definite article 'the' creates ambiguity when it is referring to a group that is not objectively verifiable." (Plaintiff's Brief at 36). It instead simply followed the Supreme Court's rule in *Torres* requiring that all appellants be specifically identified in a notice of appeal, holding that using "*et al.*" was insufficient to designate any appellant not specifically named, and the insufficiency could not be cured by looking to the appealing parties' intent.[5]

Moreover, Fed. R. App. P. 3 was amended after *Torres* to specifically allow "an attorney representing more than one party [to] describe those parties with such

---

[5] The intent that *Ford* identified (i.e., that *all* defendants intended to appeal) was based on the grammatical rule that the definite article "the" preceding the plural noun "defendants" unambiguously meant "all of the defendants." *Ford*, 866 F.2d at 870.

terms as 'all plaintiffs,' [or] '*the defendants*' . . .." (emphasis added).  Of course, the latter terminology ("the defendants") is a plural noun preceded by the definite article "the" and means *all* the defendants.  It illustrates precisely the grammatical usage Defendants rely upon in showing that the phrase "the important duties" means "all of" those duties.

Neither *Federal Gasohol Corp. v. Total Phone Management, Inc.*, 24 F. Supp. 2d 1149 (D. Kan. 1998), nor *United States v. Maryland Bank & Trust Co.*, 632 F. Supp. 573 (D. Md. 1986) (Plaintiff's Brief at 36) involved use of the definite article "the" before a plural noun, and therefore have nothing to do with Defendants' argument in this case.  *Federal Gasohol*, 24 F. Supp. 2d at 1151 ("the phrase 'proper venue and jurisdiction' is preceded by a definite article ('the')"); *Maryland Bank*, 632 F. Supp. at 578 ("ambiguity stems in large part from the placement of the definite article 'the' before the term 'owner' and its omission prior to the term 'operator'").

Plaintiff's argument is set out in the following somewhat perplexing statement:

> Appellants' interpretation of the phrase "the important duties" is unobtainable and creates the misperception of "some of" and "all of" that Appellants complain about. As previously stated, Appellants' interpretation is unclear as it has not been definitely defined, but it appears that Appellants' interpretation is the equivalent of a flying pig, something that can never be obtained so that

> Appellants have the option of always being able to deny
> Total Disability coverage under the Three Policies.

(Plaintiff's Brief at 37).

Whatever that baffling statement may mean, it does not respond to the fundamental proposition, which Defendants have clearly and definitively set out, that the use of the definite article "the" before the plural noun "important duties" grammatically and unambiguously means *all* of the important duties of an insured's Occupation, and an insured is therefore not "totally disabled" if he remains able to work performing some "important duties" after incurring a disability.

Plaintiff also asserts that "under Appellant's strained interpretation of its own policy . . . Appellants can emasculate the Total Disability provision by simply mustering up one important duty to avoid paying Total Disability benefits (which is even easier when Appellants subjectively define the insured's Occupation during the claim process)," using the absurd hypothetical of a dentist who remains able to wash his hands, which Plaintiff asserts is an important duty of dentistry. (Plaintiff's Brief at 37 n.17). That an absurd hypothetical produces an absurd result is neither surprising, nor particularly illuminating. Being able to wash one's hands is not an occupational duty that by itself generates income, any more than is being able to drive to get to the office, or being able to read. The undisputed facts in this case are that Plaintiff remained fully able, after his March 2009 surgery, to

perform the occupational duties that consumed one-third of his time and generated half his income prior to his disability.

Although Plaintiff proclaims that the "district court gave effect to the definite article 'the' when it reached its conclusion that the Three Policies were ambiguous" (Plaintiff's Brief at 39), he gives absolutely no explanation or analysis how that is the case. Michigan law prohibits treating the definite article "the" as equivalent to the indefinite article "a" or "an." (Defendant's First Brief at 30-32). The district courts' construction that the inability to perform "the important duties" could mean the inability to perform "some of the important duties" necessarily treats the definition of "total disability" as though it said the inability to perform "an important duty or duties." Michigan law does not allow that conclusion.

Plaintiff concedes that "[t]he district courts' opinion adds 'some of'" to the definition, and affirmatively admits that "the substance of the district court's opinion is that '*most*' or the '*majority*' of the important duties is 'a reasonable interpretation'" of the Policies. (Plaintiff's Brief at 40) (emphasis in original). But the Policies simply do not use those words, and a court cannot add words to a policy under the guise of interpretation (Defendants' First Brief at 33), which is what Plaintiff concedes the district court erroneously did.

Lastly, Plaintiff wrongly asserts that Defendants "admit that they are asking this Court to add the phrase 'all' to the contract." (Plaintiff's Brief at 40). To the

contrary, and as set out in Defendants' First Brief at 33-34, "the important duties" grammatically and unambiguously *means* "all of" those duties. Adding "all" to the phrase would be grammatically redundant and is not necessary.

> **2. The District Courts' Construction of the "Total Disability" Definition Is Redundant With, and Renders Superfluous, the "Residual Disability" Definition**

Plaintiff simply ignores the bulk of the majority line of cases in Defendants' First Brief at 35-45 holding that a policy's definition of "total disability" must be construed as the inability to perform *all* of the important occupational duties, because construing it (as the district court erroneously did) to also mean the inability to perform "one or more" or "some" of the important duties renders the "residual disability" definition meaningless. Nor does Plaintiff respond to the inapplicability of the few cases the district court relied upon (*Giddens* and *Dowdle*, discussed in Defendant's First Brief at 45-47).

Plaintiff gives no response to Defendants' discussion that the three Policies do not permit the "continuum of disability" that the district court posited (Doc. #48, 4/30/14 Opinion, Page ID #1414) because the Policies make "total disability" and "residual disability" mutually exclusive categories - - an insured can be one or the other, but cannot be both. (Defendants' First Brief at 47-48).

The only case Plaintiff cites is *Kerwin v. Paul Revere Life. Ins. Co.*, 6 F. App'x 233 (6th Cir. 2001) (unpublished) (Plaintiff's Brief at 44), which had absolutely nothing to do with the issue presented in this appeal. *Kerwin* simply held that the plaintiff, who was exclusively a criminal trial attorney before his disability from the stress-induced effects of Crohn's disease, was "totally disabled" even though he could subsequently work in the allegedly less stressful capacity of a judge. The plaintiff in *Kerwin* was not a judge before his disability, and *Kerwin* neither presented nor discussed the issue of how "total disability" must be interpreted in the context of a "residual disability" clause, or whether it is unambiguous.

The minority-line cases upon which the district court relied were all wrongly decided because, in addition to the reasons in Defendants' First Brief at 45-48 (and ignored by Plaintiff), *not one of them* considered the grammatical effect of the definite article in the definition of "total disability."

Plaintiff cites *Stoneman v. Paul Revere Life Ins. Co.*, 2013 U.S. Dist. LEXIS 178604 (E.D. Mich., Dec. 2013) (unpublished) (Plaintiff's Brief at 33), saying it is "[c]urious" that Defendant did not mention it in their opening brief. There is little to be curious about given that it was unpublished, non-binding and wrongly decided. It, like every other minority-line case, did not consider the grammatical structure of the "total disability" definition or the significance of using the definite

article before "important duties." On that issue, *Stoneman* (like all the other cases) is inapposite.

*Carlyon v. Mut. of Omaha Ins. Co.*, 220 Mich. App. 407, 559 N.W.2d 407 (1996) (Plaintiff's Brief at 30 and 48), is easily distinguishable. In *Carlyon*, the Plaintiff worked exclusively "as an emergency room physician until August 1991, when he became disabled from work because of a back injury." *Id*. at 445. The defendant insurer "paid plaintiff total disability benefits under the policy until June 6, 1993, when it learned that plaintiff had been working part-time as a prison doctor for the Department of Corrections since July 1992." *Id*. Being an "emergency room physician [was] a separate occupation from a general practice prison doctor" because "[e]mergency medicine is a recognized specialty and requires the ability to perform specialized tasks not required of a prison doctor." *Id*. at 447. The plaintiff was not a prison doctor before his disability. Thus, the plaintiff in *Carlyon* was engaged in entirely different occupation before and after disability. In this case, in stark contrast, Plaintiff's Occupation before disability involved management and administrative, which duties he was able to perform after disability.

Lastly, Plaintiff asserts that "this Court should affirm because the district court should have defined Leonor's occupation as a licensed dentist as opposed to 'two-thirds of his time managing and overseeing his practices'." (Plaintiff's Brief

at 48) (citing Doc. #48, 4/30/14 Opinion, Page ID#1410).  But Plaintiff gives absolutely no reason for doing so, other than wrongly saying that Defendants "initially determined his Occupation was a 'Dentist'" based upon the "same information they had when they recharacterized his 'Occupation' as a 'Dentist and Owner/Operator'."  *Id.*  As discussed *supra*, Defendants determined Plaintiff's Occupation involved management and administrative duties only after they received the 2011 Nawrocki Report.  Plaintiff does not - - because he cannot - - dispute that before March 2009 one-third of his time and half his income was earned through the same administrative and managerial occupational duties that he has remained fully able to perform.

## III.  CONCLUSION

The district court erred in finding the definition of "total disability" ambiguous.  Because it was undisputed that Plaintiff's Occupation included administrative and management duties from which he derived half of his income, and that he remains able to perform those duties, he was not "totally disabled" and Defendants were entitled to summary judgment.  Alternatively, if this Court determines that a fact issue exists whether those duties are "important duties" of his Occupation, the action should be remanded.  In either event, the district court properly dismissed Plaintiff's fraud count for failure to state a claim under Michigan law.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

By: /s/ K. Scott Hamilton
    K. Scott Hamilton (P44095)
Attorneys for Defendants/Appellants
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
Dated:  January 20, 2015     (313) 223-3500

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

The undersigned counsel of record for Defendants/Appellants pursuant to Federal Rule of Appellate Procedure 32(a), certifies the following:

1.  That this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,869 words, excluding the parts of the brief exempted by Fed. R. App. P.32 (a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in the Times New Roman type style.

/s/ K. Scott Hamilton
K. Scott Hamilton (P44095)
DICKINSON WRIGHT PLLC
Attorneys for Defendants/Appellants
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
313-223-3500

Dated: January 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2015 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/ K. Scott Hamilton
K. Scott Hamilton (P44095)
DICKINSON WRIGHT PLLC
Attorneys for Defendants/Appellants
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
313-223-3500

## ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry No. | Description | Date | Page ID Range |
|---|---|---|---|
| 1 | Complaint and Jury Demand | 12/5/12 | 1-6 |
| 8 | Answer, Affirmative Defenses and Counterclaim | 1/14/13 | 21-27 |
| 9 | Defendants' Motion to Dismiss | 1/14/13 | 28-42 |
| 14 | Plaintiff's Response to Motion to Dismiss | 2/18/13 | 52-84 |
| 15 | Defendants' Reply in Support of Motion to Dismiss (with exhibits) | 3/7/13 | 85-187 |
| 16 | Opinion and Order Granting Defendants' Motion to Dismiss Count II | 3/20/13 | 188-195 |
| 29 | Defendants' (Sealed) Motion for Summary Judgment with Exhibits | 2/7/14 | N/A |
| 30 | Plaintiff's (Sealed) Motion for Summary Judgment | 2/8/14 | N/A |
| 43 | Defendants' (Sealed) Response to Plaintiff's Motion for Summary Judgment | 2/28/14 | N/A |

| Record Entry No. | Description | Date | Page ID Range |
|---|---|---|---|
| 44 | Plaintiff's (Sealed) Response to Defendants' Motion for Summary Judgment | 2/28/14 | N/A |
| 45 | Defendants' (Sealed) Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment | 3/14/14 | N/A |
| 46 | Plaintiff's (Sealed) Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment | 3/14/14 | N/A |
| 48 | Opinion and Order Denying Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion for Summary Judgment | 4/30/14 | 1395-1426 |
| 50 | Defendants' Motion for Reconsideration | 5/14/14 | 1428-1448 |
| 52 | Notice of Determination of Motion Without Oral Argument, Setting Response | 5/28/14 | 1459 |
| 54 | Plaintiff's Response to Defendants' Motion for Reconsideration | 6/30/14 | 1484-1500 |
| 55 | Order Denying Motion Reconsideration | 8/1/14 | 1502-1507 |

| Record Entry No. | Description | Date | Page ID Range |
|---|---|---|---|
| 57 | Final Amended Judgment | 8/5/14 | 1512-1513 |
| 59 | Defendants' Notice of Appeal | 8/28/14 | 1516-1517 |

DETROIT 16344-289 1338463v1